# Richmond

## The Pittston Company v. Rufus Fulks.

June 22, 1959.

Record No. 4942.

Present, All the Justices.

The opinion states the case.

*G. R. C. Stuart* (*Penn, Stuart & Phillips,* on brief), for the appellant.

*L. Victor McFall* (*Glyn R. Phillips; Phillips & McFall,* on brief), for the appellee.

MILLER, J., delivered the opinion of the court.

This appeal by the Pittston Company (formerly Clinchfield Coal Corporation) is from an award by the Industrial Commission in favor of Rufus Fulks, who claims that he suffered total disability from an occupational disease.

At the outset we are confronted with a motion by Fulks to dismiss the appeal on the ground that this court has acquired no jurisdiction of the case because of Pittston's alleged failure "to comply with the mandatory provisions" of § 65-94, Code 1950, and Rule of Court, 5:1, § 6, "for perfecting appeals from the Industrial Commission to this Court."

The record discloses that the award by the Commission was made on July 24, 1958. Petition for an appeal was filed by Pittston with the clerk of this court on August 20, 1958, and the appeal was granted on October 13, 1958. On October 29, 1958, more than three months after the award was made and sixteen days after the appeal had been granted, Pittston filed with the clerk of this court a designation of the parts of the record it wished printed. On the 3d day of November, 1958, Fulks filed his designation of the parts of the record he wished printed, and the record as thus designated by the parties was printed.

Rule of Court 5:1, § 1, as amended September 1, 1953, provides that "On all appeals to this Court, the record shall be made up in accordance with Rule 5:1, except on appeals from the Industrial Commission (provided for by special statute)." Fulks, however, points out that § 65-94, Code 1950, provides that appeals shall lie from an award of the Industrial Commission to the Supreme Court of Appeals, in the manner provided by law in appeals in equity cases from the circuit and corporation courts. He then argues that the provision in Rule 5:1, § 6(a) which requires appellant to designate the parts of the record that he wishes printed *not less than twenty days before the record is transmitted* to the clerk of the Supreme Court of Appeals or to a Justice of the court is made applicable to appeals from the Industrial Commission because of the language in § 65-94 which

states that appeals shall be from an award "in the manner provided by law in appeals in equity cases * * *."

The answer to this contention is simply that the language of Rule 5:1, § 1, as amended in 1953, expressly excepts from the provisions of Rule 5:1 appeals from the Industrial Commission and states that such appeals are "provided for by special statute." 44 Virginia Law Review 475, at 506. It is also significant that several provisions of § 65-94, which section provides for appeals from the Industrial Commission, are wholly inconsistent with other provisions of Rule 5:1, especially § 6. Neither § 65-94 nor Rule 5:1, § 6, admits of the construction contended for by appellee. No part of Rule of Court 5:1 is intended to be or is applicable to appeals from the Industrial Commission.

After notice to counsel for appellee, the record was compiled, certified and transmitted by the secretary of the Commission to the clerk of this court. It included a copy of the evidence, as well as the Commission's findings of fact, and it was filed with the clerk of this court as required by § 65-94 and § 8-489.

Though appellant's petition for appeal was not *presented* to the Supreme Court of Appeals or one of its judges within the thirty days prescribed by § 65-94, yet it was *filed with the clerk of this court* within thirty days from the date of the award for presentation to the court or a Justice as provided for and allowed by §§ 8-475 and 8-489, Code 1950. This court thus acquired jurisdiction of the case. Appellant designated *less* than the whole of the record to be printed (which is not provided for in § 65-94), yet that did not deprive the court of the jurisdiction that it had acquired. Each litigant designated what it and he desired printed. An examination of the manuscript record discloses that all pertinent testimony was printed and exhibits transmitted. That having been done, though it be irregular and not in strict accordance with the statute, it presents no justification for dismissal. Appellee's motion is denied.

We now address ourselves to appellant's contentions that Fulks' claim is barred by the statute of limitations, and if not, that the evidence is insufficient to sustain the award.

On April 4, 1957, Fulks filed a claim with the Industrial Commission for an occupational pneumoconiosis, alleged to have been contracted during the time he was employed by three coal companies named as defendants.

On September 11, 1957, claimant testified before a hearing commissioner that he was forty-six years old, that he had worked for

Kemmerer Gem Coal Company for twenty-two years until he left in 1951; for Benedict Coal Company for four months in 1952, and for Clinchfield Coal Company, now Pittston, from July 8, 1952, to January 17, 1954. At Clinchfield he was employed as a handyman, *i.e.*, he ran a cutting machine, set timbers and threw rock dust. He was laid off on January 17, 1954, because of a reduction in the number of employees, and has not worked since. During the time he was employed by Clinchfield he lost 49 consecutive days from work because of asthma; 37 days at another time, also for asthma; and 41 days because of pneumonia.

Claimant also testified that when he went to work for Clinchfield in 1952, he was examined but was not informed that there was anything wrong with him. He said that he was not made aware that he was afflicted with an occupational disease until he received a letter to that effect under date of December 12, 1956, which was a month or two after he had been examined and hospitalized in Harlan Memorial Hospital, Harlan, Kentucky.

No medical testimony was offered by either party, but written reports of medical experts as to whether or not Fulks was suffering from occupational pneumoconiosis were submitted in evidence. The report of Dr. William H. Anderson, who examined Fulks at Harlan Memorial Hospital where he was hospitalized from October 8, 1956, to October 30, 1956, concluded that claimant was "permanently and totally disabled for all types of work by reason of occupational pneumoconiosis secondary to pulmonary emphysema."

Defendants introduced the report of Dr. Daniel Gabriel, who saw claimant on March 1, 1951. At that time a chest X-ray was made at Lee General Hospital, Pennington Gap, Va., and Dr. Gabriel made a diagnosis of minimal anthracosis (an occupational disease), and he stated that "Mr. Fulks was so informed."

At the request of defendants, claimant was examined by a group of physicians at Bluefield Sanitarium, Bluefield, W. Va. A report covering the findings was submitted by Dr. S. G. Davidson on September 18, 1957, that Fulks did not have pneumoconiosis in any stage but was totally disabled for manual labor due to asthma. This physician stated that a comparison of X-rays made in 1951 by Dr. Gabriel with those made in 1957 shows the same condition of the lungs.

The hearing commissioner held the medical testimony to be in hopeless conflict as to claimant's disability and concluded that claimant had not borne the burden of proof in establishing his claim. He

also held that claimant was barred from receiving compensation, even though he were suffering from an occupational disease because of his failure to notify his employer within thirty days or file his claim with the Commission within one year of the date the diagnosis was made known to him in 1951. Sections 65-48 and 65-49, Code 1950. Accordingly, his claim was dismissed.

Claimant applied for a review by the full Commission. By agreement of parties the claim was submitted to the full Commission on review for decision upon the evidence adduced by the hearing commissioner. The defendant specifically stated in a motion to the Industrial Commission that it did not agree for any evidence to be considered by the full Commission except that considered by the hearing commissioner. The review was had on December 2, 1957.

The full Commission found the medical testimony introduced before the hearing commissioner as to whether claimant was afflicted with occupational pneumoconiosis to be in hopeless conflict. In view of this, it determined to secure an examination and report from a disinterested expert, Dr. G. W. H. Schepers of Ann Arbor, Michigan, an eminent physician in the field of chest disorders.

The first notice to any of the litigants of the Commission's plan was in a letter of February 27, 1958, from the Commission to all counsel. It enclosed a copy of a letter from Dr. Schepers to the Commission and also requested the litigants to arrange for certain examinations that Dr. Schepers desired to be made in Ann Arbor, Michigan. Defendants promptly objected to this. By formal motion and by letter of March 4, 1958, objection was made "to the action of the Commission in submitting the case to Dr. Schepers," and to the Commission's considering any evidence other than that before the hearing commissioner. The Commission was reminded that claimant's attorney had by letter of November 25, 1957, asked that the Commission review the case upon the evidence introduced before the hearing commissioner and that all counsel had joined in that request. In this letter defendants also advised the Commission that they relied upon the provisions of the Code of Virginia and rules and regulations of the Commission, especially Rule No. 3[1].

---

1 "After the hearing of a case by a Commissioner, or Deputy Commissioner, the opinion and award may be reviewed by the full Commission upon the petition of either party at interest, but no additional testimony will be introduced upon review, and any petition for a re-opening of the case and the taking of additional testimony will only be favorably acted upon by the full Commission where it appears to the Commission that such course is absolutely necessary and advisable and also where

On March 24, 1958, the Commission advised counsel for the litigants that it intended to pay for Dr. Schepers' examination and report but could not defray the expense of preliminary examinations requested by that physician. By letter of April 8, 1958, counsel for defendants reiterated their objection to the consideration of any evidence by the Commission other than that introduced before the hearing commissioner. No further communication was received from the Commission by any litigant until July 24, 1958, when they received notice of the Commission's award.

However, on May 11, 1958, an exhaustive report was submitted to the Commission by Dr. Schepers in which it appears that he reviewed claimant's occupational history and studied, interpreted and evaluated all medical and hospital reports, relevant medical data, previous diagnoses, X-rays, electrocardiograms and radiographs. He concluded that claimant was "totally and permanently incapacitated for physical exertion as a result of pneumoconiosis, enphysema, and cor pulmonale which have their origin in the inhalation of dust during prolonged performance of work in coal mines."

The Commission found that claimant was not apprised that he was afflicted with an occupational disease until the diagnosis of that disease was first communicated to him on December 12, 1956, and that defendants were given timely notice. Thus the claim was not barred by §§ 65-48 or 65-49. It also found that he was "last injuriously exposed to the hazards which cause or augment his disease" while in the employ of Clinchfield. The case was dismissed as to Kemmerer Gem Coal Corporation and Benedict Coal Company, but an award was made to claimant against Clinchfield Coal Corporation for $25 a week on account of total incapacity, beginning January 18, 1954, and continuing during incapacity, but not to exceed 500 weeks nor $10,000.

The evidence is conflicting as to whether or not claimant was advised by Dr. Gabriel in 1951 that he was suffering from an occupational disease. The Commission was well justified in holding that his claim was not barred by the statute of limitations.

■■ It conclusively appears from the record that claimant requested,

the party requesting the same is able to conform to the rule prevailing in courts of this State for the introduction of after-discovered evidence.

"A formal petition shall be filed in all cases where such request is made with the Commission previous to the hearing upon review and a copy of the same furnished the opposite party, or his attorney. Such petition shall conform to those required in courts upon applications for the introduction of newly-discovered evidence."

and all litigants agreed, that the Commission should review and decide the case upon the evidence introduced before the hearing commissioner. However, when confronted with what it considered and deemed a hopeless conflict in the evidence, the Commission advised the litigants of its intention to obtain additional and other evidence to aid it in the evaluation of the evidence upon which the case had been submitted.

The agreement of the litigants to submit the case upon the evidence adduced before the hearing commissioner does not conclusively preclude the Commission from hearing and considering other evidence if that be deemed necessary to a correct determination of the issues before it. That procedure is permitted by § 65-87, Code 1950. On review by the full Commission the introduction of additional evidence, through the timely filing by a litigant of a petition to re-open the case, is also allowed by Rule No. 3 of the Commission under the conditions and procedure therein set forth. *Gale* v. *Zaban's Mattress, etc., Co.*, 191 Va. 610, 62 S. E. 2d 19.

However, after advising the litigants of its desire and intent to obtain and consider additional expert evidence, the Commission, over the protests of defendants, allowed laminographs to be taken and submitted them and the evidence taken before the hearing commissioner to Dr. Schepers. Thereafter it received his report in evidence without having notified defendants that the laminographs would be taken or accorded them an opportunity to examine the expert upon whose report the Commission evidently relied. In adopting this procedure it neither adhered to the requirements of § 65-87 or conformed to its own Rule No. 3.

The failure of the Commission to comply with § 65-87 and of claimant to proceed under the provisions of Rule No. 3 of the Commission resulted in the denial to Pittston of its right to see and examine the laminographs and examine Dr. Schepers whose evidence was material and adverse to Pittston's interest.

For the reasons stated the award will be set aside, and the case remanded to the Commission for such further action therein as it may be advised, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*