# Richmond

CHARLES JAMES LEWIS v. LYNCHBURG FOUNDRY COMPANY.

April 22, 1963.

Record No. 5564.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Beecher E. Stallard*, for the appellant.

*William W. Sweeney* (*Caskie, Frost, Davidson & Watts*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

■■ This is an appeal from an award of the Industrial Commission which denied compensation to the claimant, Charles James Lewis, for the occupational disease of silicosis, Code, 1950, § 65-44 as amended, on the ground that he did not give notice thereof to his employer, Lynchburg Foundry Company, within the time required by § 65-48 of the Code, 1962 Cum. Supp.

Not being able to agree with his employer as to compensation, Lewis filed his application to the Commission for a hearing, which was had before Commissioner Evans, Chairman, at Lynchburg, on December 20, 1961. Code § 65-92.

Lewis had worked for the Foundry for nearly fifteen years and it was stipulated that he was exposed to silica dust in his employment. After hearing the testimony Commissioner Evans filed an opinion in which he made a finding of fact that the medical evidence conclusively proved that Lewis "has contracted silicosis with a superimposed tuberculosis" which had caused him to be totally disabled for work since January 30, 1961, and that he "was last injuriously exposed to the causative hazards of silicosis while employed by the defendant". He further found that "The only issue to be resolved is whether or not notice of the occupational disease was given the employer within the time prescribed by Section 65-48 of the Act".

Section 65-48 of the Code is as follows:

"Within thirty days after a diagnosis of an occupational disease is first communicated to the employee, he, or someone in his behalf, shall give written notice thereof to the employer in accordance with §§ 65-82 and 65-83."

Commissioner Evans made the following finding on this issue:

"The evidence clearly preponderates in proving that the diagnosis of silicosis was first communicated to Lewis on January 31, 1961, and that notice of the occupational disease was not given the employer within thirty days thereafter and a finding is so made. No reasonable excuse has been given for failure to give the required notice. It is therefore found that claimant has failed to comply with the statutory requirements of Section 65-48 of the Act."

The claim was for that reason dismissed.

On the application of the claimant a review was had by the full Commission on July 31, 1962, Code § 65-93, as amended, following which in an opinion by Commissioner Nuckols it was held that the record clearly established "that no notice of occupational disease was given the employer within thirty days after a diagnosis of such disease was first communicated to the employee" and "the award appealed from is clearly right and must be affirmed".

Accordingly an award was entered on August 10, 1962, affirming the award and opinion of Commissioner Evans.

Under his assignments of error the claimant contends that the decision of the Commission was contrary to the law and the evidence, first, in finding that claimant failed to give the notice required by § 65-48 and, second, in failing to hold that the employer had actual knowledge of claimant's disease "through its agents and representatives from the beginning of diagnosis".

Section 65-94 of the Code provides that the award of the Commission on review "shall be conclusive and binding as to all questions of fact".

" 'In applying this section [65-94], we have repeatedly held that the Industrial Commission's finding of fact which is sustained by credible evidence is binding upon this court.' " *Mills* v. *Virginia Electric, etc., Co.*, 197 Va. 547, 551, 90 S. E. 2d 124, 127. Conversely, "if there is no credible evidence on which the Commission's findings of fact are based, such findings are not binding upon this Court and the question then presented is one of law". *Conner* v. *Bragg*, 203 Va. 204, 207, 123 S. E. 2d 393, 395.

There was ample evidence from the claimant himself that he failed to give the required notice.

The Commission found, as stated, that diagnosis of silicosis was first communicated to claimant on January 31, 1961. He did not have an attorney before the Hearing Commissioner and was questioned by Commissioner Evans, who asked him what doctor told him that he had silicosis and when did he tell him. Claimant answered that he "had been told that" in January before he left Lynchburg to go to Piedmont Sanatorium on February 19, 1961. He said Dr. Barney told him he wanted him to go to the hospital to see if there was tuberculosis on his lungs, and was showing him his x-rays. He inquired from the doctor what was "all this other" showing on the film, and the doctor said he thought it was dust from the grinding he had been doing for

fifteen years; but "what he was putting me in the hospital was to determine whether I had tuberculosis along with this".

The doctor told him, he said, that he wasn't positive whether he had tuberculosis or not, but asked him if he would go to Piedmont Sanatorium and let them check him for tuberculosis, "But," claimant said, "it was known before I left that I did have silicosis".

Again, he said that in less than a week's time after he went to Piedmont "a Dr. Sedille came down and told me that I definitely had silicosis of the lungs, but as far as tuberculosis they still could not find it".

Commissioner Evans again asked him when he first told his foreman or supervisor at the Foundry that he did have silicosis. He said he wrote a letter to Mr. Moore [the personnel manager at the Foundry]. This letter, which was produced by the assistant personnel manager, was dated July 11, 1961, and stated: "I am sure that the company is aware of my illness which resulted from my daily routine work, namely silicosis."

Claimant stated in his application for a hearing that his employer was notified of his trouble on July 17, 1961, but this appears to have reference to a letter dated July 17, 1961, addressed "To Whom It May Concern," signed by Dr. Scott, Superintendent and Medical Director of Piedmont Sanatorium, which stated that claimant had been under investigation and treatment since February 20, 1961, and that his "X-Ray shows the typical ground glass appearance of silicosis stage II in both lungs". In addition, he wrote, there were conditions which confirmed the diagnosis of tuberculosis. The assistant personnel manager of the Foundry testified that July 17 coincided with the date of Dr. Scott's first definite diagnosis of silicosis communicated to the Foundry.

Claimant further testified that he stayed at Piedmont until September, 1961, and there they found that he did have tuberculosis, "and I mean of course with silicosis, * * they told me definitely I did have it".

Dr. Barney testified that he first saw claimant on January 31, 1961, at the City Chest Clinic, where he had been referred for a large x-ray which was made on January 9 and showed an infiltration in both lungs "which was a fairly typical ground-glass appearance of silicosis and superimposed upon this was a soft infiltration * * suggestive of pulmonary tuberculosis".

It is plain from the evidence in the record that both the doctors and the claimant knew early in 1961 that claimant had silicosis, and that

the only uncertainty was whether he also had tuberculosis; and it was to determine whether he had tuberculosis that he was sent to and treated in Piedmont Sanatorium. Dr. Barney testified on December 20, 1961, that "I am certain that he has had silicosis for quite some time" and that it was his medical opinion that the silicosis preceded the tuberculosis.

It is entirely clear from the claimant's own testimony that he was told by Dr. Barney in January, 1961, that he had silicosis and by a doctor in Piedmont Sanatorium within a week after February 19, 1961, that he definitely had silicosis. It cannot be said that the finding of the Commission that the notice required by § 65-48 was not given was without credible evidence to support it.

Section 65-48, *supra*, requires that written notice be given to the employer in accordance with §§ 65-82 and 65-83. In *Pocahontas Fuel Co.* v. *Godbey*, 192 Va. 845, 854-5, 66 S. E. 2d 859, 865, we said that by § 65-46 the saving provisions of § 65-82 relative to when written notice need not be given are made applicable to occupational diseases and that a claimant is relieved of the necessity of giving written notice when it is proved that an agent or representative of the employer had knowledge of the occupational disease, and the Commission is satisfied that the employer has not been prejudiced by the failure to give written notice.

Claimant contended before the Industrial Commission and contends here that Dr. Barney was the agent of the Foundry when he examined claimant in January, 1961. The Commission found and stated in its opinion that "There is no showing, nor is there evidence in this record from which it could be inferred, that the physician was the agent of the employer for any purpose".

The record warrants that finding. There is no evidence that the examination made by Dr. Barney was at the instance of the Foundry or that he had any connection with the Foundry. Dr. Barney testified that he first saw the claimant at the City Chest Clinic where he had been referred for the taking of a large x-ray because of a suspicious x-ray taken by the State Health Department on their survey of the Foundry on November 14 [1960]; that claimant was referred to the City Clinic for a large x-ray, which was done on January 9, "and then following this an appointment was made to be seen in the Clinic". That is all the evidence there is as to Dr. Barney's status. There is no evidence that he made any report of the result of his examination to the Foundry. There is specific evidence to the contrary. The assistant personnel manager of the Foundry testified that "the first

mention ever made of silicosis was on April the 5th of 1961 in which we received a tentative diagnosis of silico-tuberculosis". This was a report, he said, from the Piedmont Sanatorium and prior to that time they had had no notice of any kind.

Finally the claimant says the Commission erred in refusing to let him introduce a discharge summary from Lynchburg General Hospital "covering diagnosis rendered Claimant" from February 1, 1961, to February 4, 1961. The refusal, said the Commission in its opinion, was because "There was no compliance with Rule 3 of the Commission, and it is apparent to us that the document offered may not be considered after-discovered evidence".

Section 65-16 of the Code provides that the Commission may make rules, not inconsistent with the Compensation Act, for carrying out the provisions of the Act. Its Rule 3 provides that no additional testimony may be introduced upon the review of the Hearing Commissioner's decision, and a petition for reopening of the case and taking additional testimony will be granted only when it appears to the Commission that such course is absolutely necessary and advisable, and also where the testimony offered is admissible as after-discovered evidence. The rule further requires that a formal petition shall be filed in all such cases and a copy thereof furnished to the opposing party.

No such petition was filed or copy furnished, and no showing made that what was offered was after-discovered evidence. Burks Pl. & Pr., 4 ed., § 324, pp. 601-2; *Gale* v. *Zaban's Mattress, etc., Co.*, 191 Va. 610, 616, 62 S. E. 2d 19, 21. No reversible error was committed in refusing the proffered document. It may be added that the document was set out in an appendix to the claimant's brief and we see nothing in it that would have required a different award.

For the reasons stated the award of the Commission is

*Affirmed.*