LYNCHBURG FOUNDRY

v.

GOLDIE E. TUNE

No. 0461-85

Argued September 19, 1985

Decided January 7, 1986

296

Counsel

J. Gorman Rosenberger, Jr. and M. E. Evans (Kizer, Phillips & Petty, on briefs), for appellant.

Donald G. Pendleton and Ronald D. Henderson (Pendleton & Gamble, on brief), for appellee.

Opinion

**BAKER, J.**—Lynchburg Foundry (employer) appeals from a decision of the Industrial Commission (Commission) which awarded workers' compensation benefits to one of its employees, Goldie E. Tune (claimant), who claims that he is suffering from an occupational disease (silicosis).[1]

Claimant filed two separate claims alleging that the silicosis condition had been diagnosed. The first claim, filed on June 10,

---

[1] *Silicosis* is a disease of the lungs caused by the prolonged inhalation of dust derived from sand, stone and like material. Code § 65.1-56(20) includes silicosis in its reference to *pneumoconiosis* as an *occupational disease. Pneumoconiosis* is a chronic disease of the lungs marked by an overgrowth of connective tissue (supporting tissue) and caused by the inhalation of large quantities of dust. *See* J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* P-201 (1985).

1981, asserted that a diagnosis of silicosis had been communicated to him on May 29, 1981. That claim, which the Commission designated as File Number 101-04-64, relied upon an x-ray of claimant's chest taken on May 29, 1981, which was read by four doctors. Only one of these made a clear finding of pneumoconiosis.[2] The other doctors' reports were either negative or stated that there were insufficient findings to constitute a Stage 1[3] silicosis, which would be required to enable the claimant to be awarded compensation benefits. As a result, Deputy Commissioner Yates denied the first request, giving as his reason that claimant "failed to carry the burden of proving an occupational disease which was the responsibility of these defendants." There was no appeal of that decision.

The second claim, which constitutes the matter we here review, asserted that the date of communication of the diagnosis of the disease was March 12, 1983. This second claim was filed because another x-ray was taken on September 23, 1982, which claimant alleged disclosed the existence of compensable silicosis. File No. 109-23-12 was assigned to this application. Employer's request on September 1, 1983, to incorporate case number 101-04-64 with case number 109-23-12 was granted.

On January 17, 1984, after a hearing, Deputy Commissioner Yates again ruled that claimant failed to carry the burden of proving the existence of an occupational disease for which the employer would be responsible. Claimant requested a review of that ruling by the full Commission.

The matter was submitted to the Commission on the record. The only x-rays considered at that hearing were those taken on September 23, 1982. Several doctors read those x-rays and reported as follows:

1. Dr. Dorris A. Cunningham. Film quality poor to fair. Negative for pneumoconiosis.

2. Dr. Maurice Bassali. Film quality good. Numerous opacities with evidence of pneumoconiosis type q/t category

---

[2] *See* footnote 1.

[3] *See* Code §§ 65.1-56(20) (a), (b), and (c), for stages of progression of the disease and the number of weeks compensation is allowable if the disease is proved to be present and work related.

½ affecting all lung zones.

3. Dr. M. R. Ramakrishnan. Film quality less than optimal inspiration. Found pneumoconiosis of the category q—1/1 in both.

4. Dr. William F. Schmidt. Film grade 2, readable quality. Cannot come to a conclusion as to whether nodulations are consistent with pneumoconiosis.

5. Dr. H. Lee Bassham. Films are substandard and are unreadable relative to the presence or absence of pneumoconiosis. He urged a further chest examination "with the patient making a deep inspiratory effort."

On May 4, 1984, the day following the hearing before the full Commission, Commissioner Joyner wrote to Dr. Cecile Rose, Pulmonary Division, Medical College of Virginia, Richmond, Virginia, and asked her to examine "claimant, making new x-rays, and rendering your opinion as to whether they demonstrate the presence of silicosis and, if so, at what stage, using ILO[4] standard." She was not asked to and did not render an opinion as to whether the claimant was suffering from Stage 1 silicosis in 1981, 1982, or 1983. She was not asked and did not attempt to read the relevant 1981 and 1982 x-rays. The Commission's letter to Dr. Rose may be more significant in what it did not ask for as distinguished from what it requested of her. It is obvious that the Commission's request to Dr. Rose concerned only conditions which existed after the date of the communication of the diagnosis on which the claim was based.

■ Employer objected to the independent examination being conducted if its purpose was to support the burden imposed on the claimant. Its objection was not sustained. The Commission responded to the objection stating that the reason an independent exam was sought was because the x-rays tendered by claimant were of marginal quality raising serious questions as to their readability or interpretation; because the doctors were divided as to whether first stage silicosis was shown; and because the Commission had the right to do so pursuant to Code § 65.1-90. Authority to obtain independent opinions in pneumoconiosis cases was ap-

---

[4] "ILO" refers to the standards of the International Labor Organization.

proved in *Pittston Co. v. Fulks,* 201 Va. 128, 109 S.E.2d 387 (1959). It should be noted, however, that in the *Pittston* case the independent examiner had reviewed claimant's occupational history, and studied, interpreted and evaluated *all* medical and hospital reports, relevant medical data, *previous diagnoses, x-rays, electrocardiograms and radiographs.* The study conducted in *Pittston* compared with the directive to Dr. Rose immediately discloses the deficiencies in the request to her.

After receiving the letter from the Commission, Dr. Rose examined claimant, took histories, and on June 1, 1984, and August 3, 1984, caused x-rays to be taken. She reported that the x-rays revealed small opacities in a 1/1 S profusion and, in summary, stated that "Mr. Tune has evidence of Stage 1 silicosis." She made reference to an October 7, 1983 x-ray she had viewed which was not in the record at the time of the May 3, 1984, hearing, and which had not been shown to either the Commission or employer prior to her report to the Commission.

Among other matters, employer asserted that, compared to their experts, Dr. Rose was lacking in expertise to qualify her to give opinions in the field of pneumoconiosis. The Commission— citing Dr. Rose's education and experience—declared her to be duly qualified. A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence. *Swersky v. Higgins,* 194 Va. 983, 985, 76 S.E.2d 200, 202 (1953). The question of qualification is largely in the discretion of the trial judge. *Id.; see also Noll v. Rahal,* 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979). We hold that the Commission is empowered with the same discretion. While Dr. Rose's experience appeared to be less than the doctors employed by employer, there was credible evidence to support her qualifications as an expert; thus, we uphold this finding of the Commission.

On August 23, 1984, the Commission sent copies of Dr. Rose's report to all counsel and solicited their response. Claimant's counsel responded by requesting the Commission to "go ahead and rule." Employer contended: (1) that the x-ray on which the claim was based was dated September 23, 1982; (2) that the new x-rays should not be considered to prove a communication date of March 12, 1983; (3) that if x-rays taken in 1984 were to be considered, employer should be permitted to have their experts examine and

read them so as to be able to assist counsel for employer in its examination of Dr. Rose and so as to be able to express their opinion as to whether these x-rays show an occupational disease; (4) that after such reading, employer should be permitted to examine Dr. Rose and the radiologist who read the new x-rays; and, (5) that employer should be permitted to examine the claimant in connection with Dr. Rose's new diagnosis of "1/1 S" since there had been no "S" diagnosis by any of the other doctors.

The Commission responded by permitting employer only to take the deposition of Dr. Rose and to view the x-rays only at the time of the examination. The other requests were denied.

After taking the deposition of Dr. Rose, employer was permitted to show their experts the June and August 1984, x-rays on which she had premised her opinion. These experts submitted written reports on their readings which were contrary to those expressed by Dr. Rose. Employer sought to have these reports made a part of the record, but the Commission declined to admit them, stating that no additional evidence would be received "regarding the x-rays nor her [Dr. Rose] evaluation." They added that to do so would "completely abrogate" the rationale of the Commission in seeking the independent examination.

The Commission found in favor of claimant and established the date of the accident to be March 12, 1983, the day which the claimant had averred as the date of communication of the diagnosis of silicosis. In its opinion, the Commission reviewed the findings of the various doctors.

The summary of the evidence stated in the Commission's opinion referred to a positive "unchallenged interpretation" by Dr. Bassali of an x-ray dated September 20, 1982.[5] It also noted the findings of the other doctors who read the 1982 x-rays. The opinion concluded that:

We must find that the claimant has preponderated in establishing that he suffers from Stage 1 silicosis.

\* \* \*

[5] An examination of the record clearly shows that there was no such x-ray. In addition, each counsel conceded in oral argument that this was error.

In so finding, we note that Dr. Bassali examined *three*[6] x-rays of the claimant and in each case noted a finding of pneumoconiosis. Dr. Ramakrishnan viewed two x-rays and also noted pneumoconiosis. *The report of the independent medical examiner, Dr. Rose, who examined the claimant and took exposure and symptomatic histories as well as x-rays, also found pneumoconiosis. Such evidence preponderates over Dr. Cunningham's 0/0 rating and Dr. Schmidt, who offered no rating.* (emphasis added).

■ The Supreme Court of Virginia has repeatedly held that the Industrial Commission's finding of fact which is sustained by credible evidence is binding on appeal. *Lewis* v. *Lynchburg Foundry Co.,* 204 Va. 303, 305, 130 S.E.2d 429, 431 (1963); *Mills* v. *Virginia Electric & Power Co.,* 197 Va. 547, 551, 90 S.E.2d 124, 127 (1955). Conversely, if there is no credible evidence on which the Commission's findings of fact are based, such findings are not binding. *Lewis* v. *Lynchburg Foundry Co.,* 204 Va. at 305, 130 S.E.2d at 431; *Conner* v. *Bragg,* 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962).

In this case, we cannot determine from reading its opinion the weight the Commission gave to the various items of evidence assigned as a basis for making the decision. For example, the Commission's opinion spoke of an "unchallenged interpretation" of a nonexistent x-ray. *See* footnotes 5 and 6. It recited the positive evidence of Doctors Bassali and Ramakrishnan concerning the September 23, 1982 x-ray, but previously held that those readings along with the contra readings left the evidence in "hopeless conflict."

The opinion then cited the findings of Dr. Rose and finally stated that "[s]uch evidence preponderates over Dr. Cunningham's 0/0 rating and Dr. Schmidt who offered no rating." It appears that the Commission is saying that Dr. Rose's opinion is the feather that tips the scale in favor of claimant.

Dr. Rose's testimony does not constitute credible evidence that the claimant suffered from silicosis at any time prior to the time of the x-rays taken under her direction in June and August 1984.

---

[6] One of these is the "unchallenged interpretation" referred to in footnote 5.

An examination of her deposition clearly discloses that she asserts that positive diagnosis of the disease preferably is made with x-rays.[7] She was not given the 1981 or 1982 x-rays to read. When shown the x-rays taken in 1983, which were not then a part of the record of this case, she opined that the 1983 x-rays were not readable. Insofar as this record is concerned, at no time did she state that the claimant suffered from silicosis on March 12, 1983, the communication date. In fact, she was never asked to express an opinion concerning the evidence (i.e., the September 23, 1982 x-ray) which the Commission deemed in "hopeless conflict." We hold that her testimony made no contribution to the resolution of that conflict.

Employer complains further that the Commission's opinion made reference to reports of Doctor Bassali and Ramakrishnan concerning an October 7, 1983 x-ray which had not been made a part of the record in this case. As of May 3, 1984 (the date of the hearing) neither that x-ray nor the reports of those doctors were part of the record. However, when the deposition of Dr. Rose was taken, employer specifically made her report and attached papers "in toto" an exhibit. Included among those papers were the two reports of which employer now complains. The employer will not be heard to complain that the Commission ought not now consider evidence which employer introduced.

Employer next alleges as error the refusal of the Commission to allow employer access to the June and August 1984 x-rays on which Dr. Rose relied. Employer asserts that it was necessary to effective cross-examination of Dr. Rose to have the benefit of employer's expert advice prior to the examination. We agree that access to the films should have been given for that purpose.

In the *Pittston* case, the Commission declined to permit the employer to see the x-rays or to examine the independent expert who had been selected by the Commission. The Supreme Court of Virginia held that it was error for the Commission to deny the employer the "right to see and examine the laminographs and examine Dr. Schepers (the independent expert) whose evidence was material and adverse to Pittston's (the employer) interest." 201

---

[7] She recognized lung biopsy as an alternative but indicated that was not a desired way of making a diagnosis. Her statement indicates that she is of opinion that reading all available x-rays is essential.

Va. at 134, 109 S.E.2d at 392 (clarifications added). For what purpose would the Supreme Court of Virginia recognize that right unless such evidence would be subject to challenge? The *Pittston* decision obviously rejects the position asserted by the Commission in this case that to permit such challenge "would completely abrogate the rational (sic) of the Commission seeking an independent examination."

■ We hold that an independent expert witness selected by the Commission pursuant to the provisions of Code § 65.1-90 together with his work product, such as x-rays or other tests and records, is subject to the same discoveries, examinations and views as any other witness in the cause being heard. It was error for the Commission to deny access to such information prior to the taking of the deposition of Dr. Rose.

Moreover, if x-rays are admitted into the record together with an expert's report—regardless of whether such evidence results from the efforts of a party or the Commission—then the reports of other experts should be admitted and considered by the Commission together with the other evidence in the record.

Nothing contained in this opinion should be construed to bar the Commission from reviewing the record as made and rendering an opinion as to the claim based on the March 12, 1983 communication date, provided no consideration be made of the nonexistent September 20, 1982 x-ray or the testimony, x-rays or report of Dr. Rose referred to herein, and provided such review is consistent with this opinion.

Accordingly, the March 8, 1985, decision of the Commission is reversed, and the cause is remanded to the Commission with instructions to conduct such further proceedings as it deems necessary to reach a conclusion in this matter consistent with the holdings of this opinion.

*Reversed and remanded.*

Koontz, C.J., concurred.

Moon, J., concurring in part and dissenting in part.

Although I concur with the decision of the majority that the case should be reversed, I feel that we should dismiss the case

rather than remanding it for further disposition.

A claimant has the burden of proving by a preponderance of the evidence that he is entitled to workers' compensation. *See Connor v. Bragg,* 203 Va. 204, 207-08, 223 S.E.2d 393, 396 (1962); *Van Geuder v. Commonwealth,* 192 Va. 548, 557, 65 S.E.2d 565, 570 (1951). When a litigant fails to meet this burden of proof, the compensation must be denied. *See, e.g., Badische Corp. v. Starks,* 221 Va. 910, 913, 275 S.E.2d 605, 607-08 (1981).

In the present case, the deputy commissioner ruled that Tune failed to carry his burden of proof. On review, the full Commission found the evidence to be in "hopeless conflict." Rather than dismissing the case, the Commission appointed its own independent expert, Dr. Rose, as permitted by Code § 65.1-90, to examine the claimant in order to resolve the conflict.

The majority has found, and I agree, that the opinion of Dr. Rose did nothing to "tip the scales in favor of claimant." Therefore, if the case is now remanded, as the majority orders, the Commission will be left to reconsider evidence which it has already found to be hopelessly in conflict and, thus, insufficient as a matter of law to support Tune's claim.

Code § 8.01-681 states that the "appellate court shall . . . render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice." In construing a predecessor statute, the Supreme Court of Virginia has held that a case should be reversed and final judgment entered when there is "no reason to believe that, upon another trial, any new or different evidence might be introduced which ought to affect the result." *Erie Insurance Exchange v. Meeks,* 223 Va. 287, 291, 288 S.E.2d 454, 457 (1982) (quoting *A.C.L.R. Co. v. A.M. Walkup Co.,* 132 Va. 386, 395, 112 S.E. 663, 666 (1922)).

Since, in the case before us, the Commission, upon remand, will be forced to reconsider evidence in "hopeless conflict," the ends of justice and standards of judicial economy require that we dismiss claimant's appeal.

Therefore, I would reverse and dismiss.