UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia


COUNTY OF HENRICO AND
  VIRGINIA ASSOCIATION OF COUNTIES
  GROUP SELF-INSURANCE RISK POOL

                                            MEMORANDUM OPINION[*] BY
v.      Record No. 0406-18-2            JUDGE WESLEY G. RUSSELL, JR.
                                              OCTOBER 16, 2018

BROOKE COLLAWN


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Scott C. Ford (Andrew E. Sassoon; Ford Richardson, P.C., on brief),
> for appellants.
>
> Brody H. Reid (Berkley D. Foltz; ReidGoodwin PLC, on brief), for
> appellee.


The County of Henrico and its insurance carrier (collectively, "employer") appeal a

decision of the Virginia Workers' Compensation Commission finding that appellee Brooke

Collawn ("claimant") sustained a compensable injury by accident and awarding her medical

benefits, temporary total disability, temporary partial disability, and attorney's fees. For the

reasons that follow, we affirm.

BACKGROUND

On appeal, "we review the evidence in the light most favorable to the claimant because

she prevailed below[.]" King William Cty. v. Jones, 66 Va. App. 531, 540, 789 S.E.2d 133, 138

(2016) (en banc).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant worked for employer as a fourth-grade teacher, earning an average weekly wage of $840.38. During a summer Teacher Work Week, on August 30, 2016, she and other school personnel visited incoming students at daycare centers and apartment complexes. Claimant was twenty-six weeks pregnant at the time and was wearing a bat girl costume and flip-flops. She wears a size ten shoe.

The school employees used a bus to make their visits; they boarded at the school. When they reached their first stop, claimant injured her ankles upon exiting the bus. She fell to the ground after losing her footing when she stepped down onto one of the bus steps. The steps measured as follows: $9^{1/2}$ inches in rise with a run of $9^{3/8}$ inches; 9-inch rise with a run of $9^{1/8}$ inches; and $8^{3/4}$ rise with a $9^{1/16}$ inch run. Claimant was not carrying anything, there was no debris on the steps, and the lighting was fine.

Claimant was taken out of work until November 8, 2016, and when she returned on November 9, she worked only half days. Claimant then went on maternity leave on December 9, 2016.

Based on the August 30 incident, claimant filed a claim for benefits with the Commission on October 5, 2016. She sought both medical and disability benefits. The claim reported that she injured her left and right ankles when "exiting school bus." Employer denied the claim, stating that the injury was not compensable under the Virginia Workers' Compensation Act because the alleged accident did not arise out of or in the course of employment.

A hearing was held before a deputy commissioner on February 16, 2017. Records that were admitted into evidence indicated that claimant "injured both ankles upon falling approx[imately] 3 feet" after she "fell off last step" and noted that claimant suffered a "right ankle fracture dislocation" after "[s]he tripped getting off a school bus."

Claimant testified, "I misjudged the steps as I was coming down them. They were steeper than I thought." When expressly asked, "[D]o you know what caused you to fall?", claimant responded, "Yes. The steps were steeper than I had anticipated. And they were small for my size 10 shoe." She further testified that prior to her fall, she never had been on that particular bus and had been on a school bus as a teacher "five times maybe."

Over employer's objections, Dano Holland, a structural and forensic engineer, testified as an expert to the standards applicable to step design under the international building code, the model for the Virginia Uniform Statewide Building Code. His testimony was offered to compare the "measurements of the bus compared to the codes that apply, which are IBC, in the general public of most ingress and egress stairs." Holland acknowledged that the building codes did not specifically deal with buses. Based on his review of photographs of the bus, Holland concluded, "The steps of the bus, their riser heights, they're higher than what's allowable in the state code. And their tread depth isn't as wide as what's been required in the building code." He explained, "All the risers are approximately two inches [taller], and all the tread depths are approximately two inches too narrow[,]" thereby making them steeper. With respect to potential defects in the stairs, Holland stated there were none. Holland acknowledged that deviations from the building code were common.

Kevin Roye, an employee of the school district's Department of Pupil Transportation, testified on employer's behalf. He had no knowledge of any other people falling from the bus steps. He testified that he had inspected the bus and that its steps complied with requirements set forth in the Virginia School Bus Specifications. In addition, Jeanetta Lee, a claims manager with the county's risk management department, testified that the bus was no different from other buses used in the county. She further testified that, like claimant, she wore a size ten shoe and that she "had no issue maneuvering the steps."

The deputy commissioner issued his decision on March 17, 2017. In considering whether claimant, in falling from the steps of the bus, "sustain[ed] an accident which arose out of and in the course of [her] employment[,]" the deputy commissioner first noted that "[t]here is no dispute that the claimant's injury was the result of an accident which occurred in the course of her employment." The deputy commissioner then addressed whether the injury arose out of claimant's employment.

After reviewing case law involving steps, the deputy commissioner concluded that claimant's injury arose out of her employment and awarded benefits. Finding that "the difference in the bus steps" made them "steeper than steps which she normally would encounter," he reasoned that "this setting was a sufficient increased risk of her employment" to find a compensable injury.

Employer sought review by the full Commission, asserting, in part, that the deputy commissioner erred in "admitting and relying on" Holland's testimony, in finding that claimant's injury arose out of her employment, and in holding that the bus steps constituted an actual risk of claimant's employment. The parties submitted written statements in support of their positions.

In its divided February 7, 2018 review opinion, the Commission affirmed the deputy commissioner's March 2, 2017 opinion.[1] In doing so, the Commission concluded that the bus steps were "unusual in their configuration" and "the unusual steepness of the bus steps was an actual risk of claimant's employment." Furthermore, the Commission concluded that the deputy

---

[1] Each commissioner wrote a separate opinion. Commissioner Rappaport wrote an opinion dissenting from the Commission's decision to award benefits. Commissioner Newman wrote an opinion that fully concurred in Commissioner Marshall's opinion, but also addressed specific issues raised in Commissioner Rappaport's dissent.

- 4 -

commissioner "did not err in admitting Holland's testimony." Accordingly, claimant was awarded both disability and medical benefits.

This appeal followed.

ANALYSIS

On appeal, employer does not contest that claimant suffered an injury or that the injury occurred in the course of her employment. Rather, employer argues that the Commission erred in concluding that the injury arose out of that employment and in the admission of and ultimate reliance on the expert testimony of Holland to aid in reaching that conclusion.[2] We address each contention below.

### I. Injury arising out of claimant's employment

"Whether an injury arises out of . . . employment involves a mixed question of law and fact, which we review *de novo* on appeal." Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411, 748 S.E.2d 650, 653 (2013) (internal quotation marks and citations omitted). Thus, "we are bound by the commission's underlying factual findings if those findings are

---

[2] Employer asserts four assignments of error:

> 1. The Commission erred in finding that the appellee sustained a compensable injury by accident arising out of her employment on August 30, 2016.
>
> 2. The Commission erred in finding that the "unusual steepness of the bus steps" constituted an actual risk of the employment.
>
> 3. The Commission erred in finding that the bus steps "were unusual in their configuration."
>
> 4. The Commission erred finding that the expert testimony of Dano Holland was admissible and relying on Dano Holland's expert testimony.

The first three challenge the conclusion that the injury arose out of claimant's employment, while the fourth challenges the evidence admitted and relied upon to reach that conclusion.

supported by credible evidence, [but] we review *de novo* the commission's ultimate determination as to whether the injury arose out of the claimant's employment." Id. at 411-12, 748 S.E.2d at 653-54 (internal quotation marks and citations omitted).

To establish that her injury arose from her employment, claimant had the burden to prove more than the injury occurred while she was at work, Cty. of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 76 (1989); she had to prove that the injury resulted from an "actual risk" of her employment. Taylor v. Mobil Corp., 248 Va. 101, 107, 444 S.E.2d 705, 708 (1994). Actual risks are conditions that are "peculiar to the work and not common to the neighborhood[.]" Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 557, 721 S.E.2d 32, 38 (2012) (quoting Immer & Co. v. Brosnahan, 207 Va. 720, 726, 152 S.E.2d 254, 258 (1967)). A risk is common to the neighborhood if it is "a hazard to which the employee would have been equally exposed apart from the employment." United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985).

We previously have defined certain motions and activities as risks of the neighborhood. Absent some additional complicating factor, we have held that "[s]imple acts of walking, bending, or turning" are risks of the neighborhood as opposed to actual risks of employment. Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000). Similarly, everyday activities such as chewing and swallowing food, Bernard v. Carlson Cos. — TGIF, 60 Va. App. 400, 410, 728 S.E.2d 508, 513 (2012), and tying one's shoes, Fetterman, 230 Va. at 259, 336 S.E.2d at 893, are risks of the neighborhood, and thus, do not arise out of a worker's employment.

Much of our "arising out of" jurisprudence involves falls on stairs. As we observed in Bernard,

> Perhaps the most common examples of the arising-out-of
> principle are the cases involving tripping on steps. An employee

- 6 -

who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite. Even though the employer provided the steps, and encouraged the employee to use them, if there is "nothing unusual about or wrong with the steps," an employee who trips over them cannot show the accident "arose out of" the employment. Johnson, 237 Va. at 185-86, 376 S.E.2d at 76.

On the other hand, if the steps are "unusual" because they are "slightly higher than normal" or otherwise peculiar, then tripping over them would involve an accident arising out of the employment. Id. (pointing out these "facts were crucial" to cases like Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 159 S.E.2d 633 (1968)). In such cases, the steps present an *enhanced* risk, qualitatively different from the steps most people walk up and down on and off the job.

60 Va. App. at 407, 728 S.E.2d at 511-12 (footnote omitted). Thus, given that claimant's injury resulted from a fall on steps, she had the burden to establish that the steps were defective or otherwise "unusual" when compared to "the steps most people walk up and down on and off the job" almost every day. Id.

Before turning to claimant's evidence regarding these stairs, it is worth emphasizing why falls on "normal" stairs are not compensable. Such stairs constitute a risk of the neighborhood not because they are stairs, but because they are an obstacle faced as often outside of the workplace as within it. Stairs of "normal" height, depth, and width are potential obstacles encountered by employees almost everywhere they go, whether at work, in the home, in public buildings, and in retail stores. Such stairs are found both inside and outdoors. It is because workers are equally exposed to the risks posed by the obstacles that are "normal building stairs," whether at work or not, that such falls on "normal" steps are not risks of the employment. This is true wherever such non-defective "normal" steps are encountered, even on a bus.

Here, based on the evidence before it, the Commission found as fact that the steps on which claimant fell were "unusual," and therefore, not "normal building stairs." As the deputy

commissioner noted, evidence established the bus steps were "approximately two inches taller and two inches narrower than a normal building staircase . . . ." The Commission, relying on the same evidence, effectively adopted this conclusion when it found that the bus steps in question were "taller and narrower than a 'regular' or 'normal' stairway." The evidence amply supports these conclusions, which take these steps outside the rule for "normal" steps. See Hosey, 208 Va. at 569, 159 S.E.2d at 634 (holding steps that "were just a little bit higher than usual for a step" were a risk of the employment as opposed to the neighborhood).

Employer, echoing the opinion of the dissenting commissioner, responds that the steps were not unusual when judged against normal *bus* steps, stressing that the steps here met the applicable "Virginia School Bus Specifications." From this premise, employer argues that the evidence thus failed to demonstrate "that there was a defect with the steps or the steps were unusual to the neighborhood."

The premise underlying this argument does not alter the analysis. The fact that the steps might be "normal school bus steps" that meet certain guidelines does not make them a risk of the neighborhood. Every day Virginia employees encounter any number of things, from forklifts to safety equipment at nuclear power plants, that are standard for their particularized purpose and meet relevant safety guidelines. Despite meeting the relevant safety guidelines, the risks attendant to these things are not risks of the neighborhood because they are normally encountered in the workplace only and pose "a hazard to which the employee would [not] have been equally exposed apart from the employment." Fetterman, 230 Va. at 258, 336 S.E.2d at 893. The relevant question thus becomes, whether an employee faces the hazards posed by *school bus* steps as often outside of employment as while on the job.

The answer, of course, is no. Absent being a school system employee (and perhaps the occasional field trip), most adults do not encounter school bus steps at all let alone with the

- 8 -

frequency necessary to render them a risk of the neighborhood. In testimony accepted by the Commission, claimant, *a school system employee*, testified that she had encountered school bus steps only five times as an adult. Simply put, unlike "normal" building steps, school bus steps (at least those with these dimensions) are not a part of most people's everyday life and simply are not encountered by most people most every day.[3] Thus, they are not a risk of the neighborhood, and the Commission did not err in concluding that claimant's fall arose out of her employment.

## II. Admission of and reliance on expert opinion

In general, "[t]he question whether a witness is qualified to testify as an expert is largely within the sound discretion" of the lower tribunal, and therefore, we only reverse such a decision if it constitutes an abuse of that discretion. Jackson v. Qureshi, 277 Va. 114, 121, 671 S.E.2d 163, 166-67 (2009) (internal quotation marks and citations omitted); see also Lynchburg Foundry v. Tune, 1 Va. App. 295, 299, 338 S.E.2d 645, 647 (1986) (adopting abuse of discretion standard for review of Commission decisions regarding qualifications of experts). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision. This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013) (internal citation omitted). Furthermore, to the extent that the issue involves the Commission's interpretation of its own rules, we review the Commission's action deferentially and will reverse only if its action is

---

[3] Even assuming that bus steps meeting the Virginia School Bus Specifications also would be standard bus steps on a public transit bus, a church bus, and a Greyhound, the analysis would be the same. Although the number of adults encountering steps on these types of buses on a regular basis is larger than the universe of adults who regularly encounter school bus steps, we cannot say that, as a matter of law, such encounters are sufficiently frequent to classify "bus steps" as a risk of the neighborhood.

arbitrary and capricious. Jenkins v. Webb, 52 Va. App. 206, 211, 662 S.E.2d 633, 635 (2008) (citation omitted).

Employer, citing the Virginia Rules of Evidence and appellate decisions regarding the qualification of experts in circuit court proceedings, argues that the Commission erred "in finding that Dano Holland's expert testimony was admissible and relying on Mr. Holland's expert testimony." We disagree.

First, we note that neither the Virginia Rules of Evidence nor appellate decisions regarding those Rules are binding on the Commission regarding the admission of expert testimony. Pursuant to Rule 2.2 of the Rules of the Commission, the Commission "is not bound by statutory or common law rules of pleading or evidence nor by technical rules of practice." Given Rule 2.2, we repeatedly have held that "the [C]ommission is not bound by common law rules of evidence, but may adopt whatever procedures it sees fit so long as they 'protect the substantial rights of the parties.'" Ceres Marine Terminals v. Armstrong, 59 Va. App. 694, 702, 722 S.E.2d 301, 305 (2012) (quoting Rios v. Ryan, Inc. Cent., 35 Va. App. 40, 44-45, 542 S.E.2d 790, 791-92 (2001)).

Accordingly, the Commission has tremendous latitude in determining whether to admit and eventually rely on expert testimony in an individual case. As we have observed regarding the expert qualification decision of another adjudicative body that similarly is not bound by the Virginia Rules of Evidence,

> the ultimate decision of what [expert qualification] standard should be applied belongs to the Board; it is free to adopt the traditional Virginia standard, the more stringent medical malpractice standard, or a lesser standard so long as the chosen standard is rational, is otherwise consistent with Virginia law, and provides determining principle[s] that can be applied consistently and that do not reduce the qualification decision to mere whim.

Va. Bd. of Med. v. Zackrison, 67 Va. App. 461, 480, 796 S.E.2d 866, 875 (2017) (internal

quotation marks and citation omitted).

Nothing about the Commission's decision to allow and eventually rely on Holland's

testimony offends these principles. It is undisputed that Holland is a structural engineer who,

through his education and experience, is familiar with building design and the international

building code, which sets design specifications for "normal" building steps and stairs.

Accordingly, he provided the factfinder with an objective baseline for the height, width, and

depth of a "normal" building step against which the bus steps involved in the accident could be

compared.[4] Because claimant was required to establish that her fall was from something other

than "normal" steps, this objective information was relevant and provided useful information to

the factfinder.[5] Accordingly, the Commission did not abuse its discretion in admitting and

relying upon Holland's testimony.

Employer's arguments to the contrary are unconvincing. Contrary to employer's

assertion, Holland's testimony as to the difference between the height of the bus step as

---

[4] Ironically, an argument employer advanced demonstrates the benefit of Holland's testimony regarding "normal" building steps. Focusing on a portion of the deputy commissioner's opinion, employer argues that it was error for the deputy commissioner to rely on claimant's "subjective perception" that the bus steps were steeper than normal stairs and that objective evidence of the difference is necessary. This argument fails for two reasons. First, claimant, through the testimony of Holland, objectively established the height of "normal" steps, allowing the factfinder to contrast that height with the objective measurements of the bus steps involved in the accident. Second, the deputy commissioner did not base his conclusion on the claimant's subjective perception. Although, as employer notes, he did write that claimant "perceived [the bus steps] were steeper than [normal] steps . . . ," this was not the basis for the deputy commissioner's conclusion. In the very next sentence, the deputy commissioner states his conclusion that "[i]ndeed [the bus steps] were" steeper than normal steps. Any suggestion otherwise misstates the deputy commissioner's opinion.

[5] Our conclusion that the Commission did not err in admitting and relying upon Holland's testimony should not be read as requiring such testimony to establish that a step or anything else is not a risk of the neighborhood. That expert testimony is helpful in answering such questions does not mean it is required.

measured in this case and a "normal" building step did not impermissibly invade the province of the Commission as to the ultimate issue. Only the Commission could conclude that the bus step at issue was not a risk of the neighborhood, and Holland did not offer an opinion on that question. Thus, although his opinion provided an objective, factual basis for the conclusion that the Commission ultimately reached, his testimony did not invade the province of the Commission.

Additionally, contrary to employer's assertion, Holland's stated unfamiliarity with other building codes or the standard for school bus steps in Virginia did not require rejection of his testimony. First, as noted above, claimant had to establish that the steps were different than normal building steps and not necessarily normal bus steps regardless of the fact that these steps were on a bus. Thus, a lack of familiarity with normal bus steps was not disqualifying. Furthermore, questions about the limits of Holland's knowledge provided the opportunity for cross-examination, an opportunity of which employer took advantage. However, Holland's unfamiliarity with other building codes and standards for bus steps goes to the weight a factfinder may wish to give his testimony, not its admissibility. Simply put, such unfamiliarity does not negate the Commission's conclusion that he had sufficient knowledge and experience to provide admissible, expert testimony. Accordingly, the Commission did not abuse its discretion in admitting and ultimately relying upon Holland's testimony.

CONCLUSION

For the foregoing reasons, the decision of the Virginia Worker's Compensation Commission is affirmed.

Affirmed.

- 12 -