COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


JANINE NANNETTE CARLSON, ET AL.

                                        OPINION BY
v.  Record No. 1626-97-2          JUDGE JAMES W. BENTON, JR.
                                      FEBRUARY 17, 1998
DEPARTMENT OF MILITARY AFFAIRS/
 COMMONWEALTH OF VIRGINIA


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Benjamin H. Woodbridge, Jr. (Woodbridge &
            Reamy, on brief), for appellants.

            Ingrid E. Olson, Assistant Attorney General
            (Richard Cullen, Attorney General; Gregory
            Lucyk, Senior Assistant Attorney General, on
            brief), for appellee.


     Timothy Eric Carlson, a member of the Virginia National

Guard, was killed in a car accident while en route to his base

for training.  His widow, Janine Carlson, appeals from a Workers'

Compensation Commission decision denying an award of death

benefits and funeral expenses.  The commission ruled that

Carlson's death did not arise out of, or in the course of, his

employment because Carlson's death occurred while he was going to

work and did not fall within any of the well recognized

exceptions to the "coming and going" rule.  We affirm the

decision.

                              I.

     On the weekend of December 4 and 5, 1993, Carlson was on

"inactive duty training" with the Virginia National Guard at Fort

A.P. Hill in Bowling Green, Virginia.  Carlson's widow testified

that Carlson reported for duty on Saturday morning, December 4, and that she met him later that afternoon at Fort A.P. Hill to attend a Christmas dinner sponsored by the National Guard. When the dinner ended at 8:00 p.m., the Carlsons left together and returned to their home in Fredericksburg.

Carlson left home to return to Fort A.P. Hill at 7:00 a.m. Sunday morning with Randall Lincoln, who was also a member of the National Guard. Lincoln was driving southbound on Route 2 in Caroline County and was traveling at a high rate of speed in rainy weather when he lost control of the car and collided with another vehicle. Carlson died in the accident.

Lieutenant Colonel Jeffrey Allen testified that "according to the training schedule, . . . [Carlson] was to report at 7:30 in the morning on Saturday, be dismissed later that afternoon at approximately 4:30, and to return home, and he was to come back on Sunday at 7:30 in the morning, and be released at about 4:30 in the afternoon on Sunday." Allen also testified that the weekend drill was made up of four four-hour blocks of time called unit training activity periods. Carlson completed two unit training activity periods on Saturday. According to a Statement of Medical Examination and Duty Status, which was stipulated as evidence, Carlson's inactive duty training began at 8:00 a.m. on Saturday, December 4 and was to end at 3:30 p.m. on Sunday, December 5.

Allen further testified that the National Guard neither

reimbursed Carlson for mileage between his home and Fort A.P. Hill, nor provided Carlson with transportation between his home and Fort A.P. Hill. Allen testified that Carlson was not tasked with any work assignment when he travelled between his home and Fort A.P. Hill and that Carlson "was simply coming to work" on Sunday when the accident occurred. Allen also testified that members of the National Guard generally would not spend the night at Fort A.P. Hill. They would be released by the commanding officer to return home and would report for duty the next morning.

Denying an award, the commission ruled that Globe Indemnity Co. v. Forrest, 165 Va. 267, 182 S.E. 215 (1935), did not control this fact situation and made the following findings:

> [Carlson] was attending a weekend drill which consisted of four, four-hour training periods. He was free to leave the post after the completion of the second four-hour training period on Saturday, December 4, 1993, as noted above. It was not necessary that [Carlson] obtain a pass to leave the post, as was the case with [the guardsman in Forrest]. While his employment status as a guardsman may have been of a continuing nature, as would have been the situation with normal civilian work, his dependents must still show that he was charged with some duty of his employment at the time of his injury, or that this case falls within one of the exceptions to the "going and coming" rule, as noted by the Deputy Commissioner.

## II.

Carlson's widow argues that Forrest supports her entitlement to an award. Although the Department of Military Affairs

concedes that Carlson was an employee of the National Guard at the time of his death, see Code § 65.2-101, it argues that Carlson's widow did not meet her burden of proving that Carlson's death arose out of and in the course of his employment with the National Guard.

A claimant for death benefits under Code § 65.2-512 must prove that the employee's death arose out of and in the course of the employment. See Baggett Transportation Co. v. Dillon, 219 Va. 633, 636-37, 248 S.E.2d 819, 821 (1978).

> The expressions "arising out of" and "in the course of" are used conjunctively and are not synonymous. Both conditions must be present before compensation can be awarded.
> The words "arising out of" have been construed . . . to refer to the origin or cause of the injury, and the words "in the course of" refer to the time, place and circumstances under which the accident occurred.
> [A]n accident occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.
> . . . [A]n injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as

- 4 -

a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Thus it clearly appears that in order for an injury to be compensable on the ground that it arose out of and in the course of employment it is not enough to show merely that the accident occurred during the period of the employment and while the employee was about his master's business. It must also be shown that the accident occurred at a place where, from the nature of the work, the employee was reasonably expected to be.

Conner v. Bragg, 203 Va. 204, 208-09, 123 S.E.2d 393, 396-97 (1962). "Whether an accident arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal." Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 190, 355 S.E.2d 347, 347 (1987).

As a general rule, an injury or death is not compensable if it occurs while an employee is traveling to or from work. See Harbin v. Jamestown Village Joint Venture, 16 Va. App. 190, 193, 428 S.E.2d 754, 756 (1993); Sentara Leigh Hosp. v. Nichols, 13 Va. App. 630, 636, 414 S.E.2d 426, 429 (1992). This rule is premised upon the principle that an employee traveling to or from his workplace "is not engaged in performing any service growing out of and incidental to his employment." Kendrick, 4 Va. App.

at 190, 355 S.E.2d at 347. However, several exceptions exist to the "coming and going" rule. Id. The following three exceptions are generally recognized: "(1) where the means of transportation used to go to and from work is provided by the employer or the employee's travel time is paid for or included in wages; (2) where the way used is the sole means of ingress and egress or is constructed by the employer; and (3) where the employee is charged with some duty or task connected to his employment while on his way to or from work." Sentara, 13 Va. App. at 636, 414 S.E.2d at 429. The burden of proof is upon the dependents of the deceased employee to establish by a preponderance of the evidence that one of these exceptions applies. See id. at 636, 414 S.E.2d at 430.

The evidence proved that Carlson was traveling from his home to his duty station at Fort A.P. Hill when he was killed. The evidence in this case readily eliminates the first and second exceptions to the "coming and going" rule. First, the uncontradicted evidence proved that Carlson was not reimbursed by the Department for travel en route to training. Allen testified that Carlson was not reimbursed by the Department for mileage and that transportation was not provided by the National Guard. Second, Lincoln and Carlson were traveling on Route 2 in Caroline County at the time of the accident. That route is a public highway, was not constructed by the Department, and was not the sole means of ingress and egress to Fort A.P. Hill.

As to the third exception, the record contains testimony of Lieutenant Colonel Allen that Carlson was not engaged in any duty or task connected with his employment while en route to Fort A.P. Hill. After Carlson completed his two unit training activity periods on Saturday, he was released to go home and was at liberty to do as he pleased until he reported to base on Sunday morning. Carlson's only responsibility was to return to Fort A.P. Hill on Sunday at 7:30 a.m. His obligation to report to his duty station does not equate to having a responsibility to the National Guard while he was en route to Fort A.P. Hill.

Nonetheless, Carlson's widow argues that this case is governed by Forrest and that Carlson's duty status is the dispositive factor. We disagree. The commission correctly ruled that the holding in Forrest is not dispositive of the issue in this case.

Forrest was an enlisted member of the Virginia National Guard attending an annual two week encampment at Virginia Beach in August 1933. 165 Va. at 268, 182 S.E. at 215. Forrest left the military camp at 7:30 p.m. on a pass and visited places of amusement in the town of Virginia Beach. At 10:00 p.m., a lieutenant in the military police ordered Forrest to take two intoxicated National Guard soldiers back to the military camp. While Forrest was returning to the military camp with the intoxicated National Guard soldiers, Forrest and one of the soldiers sat on a railroad track. When a train approached,

Forrest attempted to move the intoxicated soldier from the tracks and was injured by the train.  Id. at 269, 182 S.E. at 216.  The commission awarded Forrest benefits under the Workmen's Compensation Act, and the employer and its insurer appealed.

> The Supreme Court stated the issue in Forrest as follows:
>> The contention of the appellant, who is the insurance carrier is that the accident did not arise out of and in the course of [Forrest's] employment, but that it was the result of misconduct on the part of [Forrest] which bars him from the allowance of compensation. . . .
>> As to the first contention, the carrier urges that, when [Forrest] was given a pass to leave the military reservation for Virginia Beach and proceeded to avail himself of its privileges, there was a cessation of the relation of master and servant between himself and the State of Virginia, his employer.

165 Va. at 270, 182 S.E. at 216 (emphasis added).

We believe the Supreme Court's description of the issue and argument of the insurance carrier manifestly established that the Forrest decision primarily decided whether Forrest was an employee of the National Guard when he was injured.  Even though in 1935, when Forrest was decided, the Act stated that "the term 'employee' shall include the officers and members of the national guard," Code § 1887(2)(a) (1930), that provision of the Act merely brought the National Guard within the purview of the Act and did not further delimit when the period of employment began and ended.

The Forrest decision clearly held that although Forest was

on a pass for recreational leave, the employment relationship still existed because Forrest was on active duty. 165 Va. at 270, 182 S.E. at 216. The Court rejected the argument that Forrest's release on a pass "constituted a severance of the relation of master and servant" between the National Guard and Forrest. Id. The Court emphasized the continuing nature of Forrest's employment and held that "'the relationship of master and servant was continuous from the moment when Forrest reported . . . in compliance with the orders from his employer, the State of Virginia, until he was released from active employment by the termination of said orders.'" Id. at 271, 182 S.E. at 216 (citation omitted). This and other pertinent discussions in Forrest are germane solely to the insurer's argument concerning Forrest's employment relationship.

We concede, as we must, that one reading of Forrest suggests that because the Court affirmed the award of benefits, the Court also necessarily decided that the event that injured Forrest also arose out of Forrest's employment. Although the Forrest opinion notes that "it is unnecessary to discuss the effect of the [lieutenant's] order" that Forrest was implementing when Forrest was injured, the opinion points out "Forrest's immediate obedience to the command of his superior officer but emphasizes the continuity of the relationship of master and servant." 165 Va. at 273, 182 S.E. at 217. Indeed, in a later decision, see Norfolk & Washington Steamboat Co. v. Holladay, 174 Va. 152, 5

S.E.2d 486 (1939), the Supreme Court observed "that [Forrest] turned upon whether there had been a temporary cessation of the relationship of master and servant."  Holladay, 174 Va. at 161, 5 S.E.2d at 490.  Significantly, however, the Court in Holladay reiterated the evidence that the Forrest opinion declared unnecessary, viz. that Forrest "had been instructed by his superior officer to assist in returning to camp" the intoxicated soldier.  Holladay, 174 Va. at 161, 5 S.E.2d at 490.  We conclude, therefore, that the Supreme Court tacitly recognized in Holladay that the evidence in Forrest proved that Forrest was acting under orders and, thus, was engaged in an activity that arose out of his employment.  In any event, we do not read Forrest to hold that every injurious event suffered by a member of the National Guard arises out of and in the course of employment whenever the member is "on duty."

Credible evidence in the record supports the commission's finding that Carlson was not engaged in an activity that arose out of his employment.  First, the evidence proved that Carlson was on "inactive" duty training and not on "active" duty training.  See Code § 44-41; Code § 44-83.  Lieutenant Colonel Allen testified that "according to the training schedule . . . [Carlson] was to report at 7:30 in the morning on Saturday, be dismissed . . . at approximately 4:30, and to return home, and . . . come back on Sunday at approximately 7:30 in the morning, and be released at about 4:30 in the afternoon on

Sunday."  He also testified as follows:

Q.  [B]ut the records reveal that he was activated for duty that weekend -- I mean, this was a weekend drill that required his presence at A.P. Hill?

A.  That's correct.  And . . . a weekend drill typically is made up of what we call four, four hour blocks of time which we refer to as unit training activity periods, or U.T.A.'s.  So there would have been two U.T.A.'s on Saturday performed, or four -- two four hour blocks of, of training, . . . .

Thus, Carlson was not in uninterrupted, continuous service for the two-day period of "inactive" duty training.

Second, Allen testified that Carlson was not reimbursed for mileage to and from his home and Fort A.P. Hill, that the National Guard did not provide for Carlson's transportation between his home and Fort A.P. Hill, and that Carlson was not tasked with any National Guard duty while going from his home to Fort A.P. Hill.

Carlson's duty orders clearly establish that he was an employee of the National Guard, a prerequisite for coverage under the Act.  See Code § 65.2-101; Forrest, 165 Va. at 271, 182 S.E. at 216; Cotman v. Green, 4 Va. App. 256, 258, 356 S.E.2d 447, 448 (1987).  However, the evidence supports the commission's finding that Carlson was not performing any task of his employment when he was travelling from his home to Fort A.P. Hill.  Accordingly, we hold that Carlson's widow has not carried her burden of proving that her husband's death arose out of and in the course of his employment with the National Guard.  For the reasons

- 11 -

stated, the decision of the commission denying benefits is affirmed.

<u>Affirmed</u>.