KELSEY, Judge.
The Virginia Workers’ Compensation Commission denied a claim filed by Michael Bernard, a restaurant waiter who “attempted to swallow a piece of quesadilla that was too big for his esophagus.” Appellant’s Br. at 10. The commission found Bernard’s injury occurred in the course of his employment but not as a result of an actual risk of employment. *403 Agreeing with the commission’s legal reasoning and deferring to its factfinding, we affirm.
I.
We view the evidence on appeal in the light most favorable to Bernard’s employer, “the prevailing party before the commission.” Dunnavant v. Newman Tire Co., 51 Va.App. 252, 255, 656 S.E.2d 431, 433 (2008).
In 2010, Bernard worked as a host and waiter at a TGI Friday’s (TGIF) restaurant. When new food selections came out, he and other employees often sampled the food so they could make recommendations to customers. The commission found Bernard “was not required to taste anything” and “did not anticipate being disciplined” if he chose not to sample the food. Bernard v. Carlson Cos.-TGIF, 2011 Va. Wrk. Comp. Lexis 401 (Nov. 23, 2011). In January 2010, Bernard sampled a quesadilla. Though he had never before had problems swallowing food, Bernard choked on a partially chewed bite of the quesadilla. The strenuous process of dislodging it damaged his esophagus.
Bernard filed a worker’s compensation claim, contending the injury occurred in the course of his employment and arose out of an actual risk of his employment. He did not allege the quesadilla was unusual or defective in any way. Bernard has had Crohn’s disease since childhood. But he did not claim, nor did the evidence prove, that some peculiar quality of the quesadilla triggered his underlying Crohn’s disease.
The deputy commissioner denied the claim, finding the injury occurred in the course of the employment but did not arise out of an actual risk of the employment. Relying on precedent from the commission,[1] the deputy held no evidence *404 suggested the quesadilla was in any way unusual or defective. On review, the majority of the commissioners agreed. Relying on its own precedent, as well as our caselaw, the commission held:
[W]e find that the claimant’s injury did not arise out of a risk of his employment. In cases of injury due to food provided by the employer, we have found compensable injuries only when there was something unusual or abnormal about the food, i.e. it was spicy, hot in temperature, or contained a hard object. Here, there was no problem documented with the quesadilla which became stuck in the claimant’s throat and caused his injury. The claimant did not assert that it was something that he should not eat because of his medical condition. The claimant would have been equally exposed to any risk connected with eating an ordinary quesadilla had he eaten it apart from his employment.
Id. Commissioner Diamond dissented on the ground that TGIF exposed Bernard to the risk of eating “novel foods” like a quesadilla. Id.
II.
On appeal to us, Bernard concedes he “attempted to swallow a piece of quesadilla that was too big for his esophagus.” Appellant’s Br. at 10. The incident should be covered by the workers’ compensation statute, Bernard argues, because TGIF “provided” the quesadilla and “encouraged” him to eat it. Id. We agree TGIF provided Bernard with the quesadilla, while he was working, and encouraged him to eat it—thus his injury occurred in the course of his employment. We disagree, however, that his failure to fully chew the quesadilla and his resulting injury arose out o/his employment.
A. BASIC ARISING-OUT-OF PRINCIPLES
The Workers’ Compensation Act applies when the claimant “satisfies both the ‘arising out of and the ‘in the course of prongs of the statutory requirements of compensa *405 bility.” Butler v. S. States Coop., Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005). “The concepts ‘arising out of and ‘in the course of employment are not synonymous and both conditions must be proved before compensation will be awarded.” Clifton v. Clifton Cable Contracting, LLC, 54 Va.App. 582, 539, 680 S.E.2d 348, 352 (2009) (quoting Grand Union Co. v. Bynum, 226 Va. 140, 143, 307 S.E.2d 456, 458 (1983)).
No matter how tempting it is to conflate the two concepts, we must be vigilant “to maintain the distinction between arising ‘out of and arising ‘in the course of employment.” Cnty. of Chesterfield v. Johnson, 237 Va. 180, 186, 376 S.E.2d 73, 76 (1989). Failing to do so transforms the analysis into an assessment of “positional risk,” which asks only if the injury occurred during the course of employment. Id. at 185, 376 S.E.2d at 75-76. Arguments like this—overlooking “the difference between the concepts of ‘arising out of and ‘in the course of the employment”—are little more than efforts to “eradicate the distinction which exists under Virginia law between these expressions” and, if successful, “would mean an acceptance of the ‘positional risk’ doctrine in cases of this type and amount to a rejection of the ‘actual risk’ test long-recognized in Virginia.” Baggett & Meador Cos. v. Dillon, 219 Va. 633, 640, 248 S.E.2d 819, 823 (1978) (citation omitted).
To this end, Virginia follows the “actual risk” doctrine which “excludes ‘an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.’ ” Taylor v. Mobil Corp., 248 Va. 101, 107, 444 S.E.2d 705, 708 (1994) (quoting Johnson, 237 Va. at 183, 376 S.E.2d at 75, and United Parcel Serv. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). An “ ‘actual risk’ of employment” is “not merely the risk of being injured while at work.” Id. Reversing one of our opinions for “[i]n effect” applying the “doctrine of positional risk,” the Virginia Supreme Court repeated that it has “consistently rejected” the doctrine. Hill City Trucking v. Christian, 238 Va. 735, 740, 385 S.E.2d 377, 380 (1989). The “actual risk” standard, the Court emphasized, necessarily excludes an injury caused *406 by “a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.” Id. at 739, 385 S.E.2d at 379 (emphasis in original) (quoting Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822).
Virginia courts have applied this understanding of the actual risk doctrine in numerous cases.[2] The first premise of the actual risk doctrine requires a “hazard” or “danger” not equally present “apart from the employment” but rather one “peculiar to the work.” Id. Without this precondition, any injury—of any kind no matter the cause—would be covered by the Workers’ Compensation Act. This would be unfair to employers (by greatly expanding their no-fault liability for worker injuries) and equally unfair to employees (by greatly expanding the employer’s immunity to fault-based tort recoveries). Policing the line between coverage and noncoverage is critical to the “societal exchange” that underlies the “quid pro quo ” of the statute. Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 325 (1989).
*407 Perhaps the most common examples of the arising-out-of principle are the cases involving tripping on steps. An employee who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite. Even though the employer provided the steps, and encouraged the employee to use them, if there is “nothing unusual about or wrong with the steps,” an employee who trips over them cannot show the accident “arose out of’ the employment. Johnson, 237 Va. at 185-86, 376 S.E.2d at 76.
On the other hand, if the steps are “unusual” because they are “slightly higher than normal” or otherwise peculiar, then tripping over them would involve an accident arising out of the employment. Id. (pointing out these “facts were crucial” to cases like Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 159 S.E.2d 633 (1968)). In such cases, the steps present an enhanced risk,[3] qualitatively different from the steps most people walk up and down on and off the job.
It does not matter that the employee must walk up and down the steps as a mandatory part of his employment. That obligatory fact—like the fact that Bernard ate the quesadilla to be a better waiter—only establishes the injury occurred during the course of employment. “The fact that the injury *408 occurred at work adds nothing and answers nothing, when the inquiry is, did the injury arise out of the employment. It simply helps prove the ‘in the course of prong of the compensability test.” Johnson, 237 Va. at 185, 376 S.E.2d at 76.
B. THE INAPPLICABLE STREET-RISK EXCEPTION
Virginia courts have carved out of these general principles one notable exception. Under the “street-risk rule,” Marketing Profiles, Inc. v. Hill, 17 Va.App. 431, 435, 437 S.E.2d 727, 730 (1993) (en banc), the generally applicable principles— excluding coverage for unpeculiar risks, common to everyone—do not necessarily apply to vehicle accidents caused by ordinary street risks. “An exception to the rule that the risk of employment must be a risk to which the common neighborhood is not exposed is the ‘Street Risk Doctrine.’ This principle recognizes compensable injuries that occur in vehicular collisions while an employee is on his or her master’s business.” Lawrence J. Pascal, Workers’ Compensation Practice in Virginia H 2.401, at 58 (8th ed.2011) (emphasis added).
The cases applying the street-risk doctrine represent a departure from traditional principles. Statements in our opinions suggesting “the fact that the general public may be exposed to the same risk is not dispositive,” post, at 414, 728 S.E.2d at 515, originated in the street-risk cases. See Lucas v. Lucas, 212 Va. 561, 186 S.E.2d 63 (1972); Immer & Co. v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967); Dreyfus v. Meade, 142 Va. 567, 129 S.E. 336 (1925).[4] Extending the reasoning of those cases outside their unique context impli *409 cates policy judgments best left for legislative, not judicial, innovation. We thus decline the opportunity to extend the street-risk exception to cases where, as here, the employee sustains injury eating at work.
C. THE COMMON AND UNPECULIAR QUESADILLA
Bernard’s quesadilla was neither a hazard nor a danger—it was simply a quesadilla. No evidence suggested it had unusual properties or was made with defective ingredients. It could not be distinguished (for purposes of presenting a choking risk) from any other quesadilla or, for that matter, any food that requires chewing before swallowing.
Even if we could call a flawless quesadilla a “hazard” or a “danger,” Hill City Trucking, 238 Va. at 739, 385 S.E.2d at 379, we could hardly conclude it was one “peculiar” to TGIF and “not common to the neighborhood” of quesadilla eaters, id. Nor could we say the risk of Bernard choking on under-chewed food was something other than “a hazard to which the workman would have been equally exposed apart from the employment.” Id. (emphasis in original) (quoting Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822). Only a court applying the positional risk doctrine could hold otherwise.[5]
*410 In sum, the commission correctly concluded Bernard’s choking injury occurred in the course of his employment. TGIF provided the quesadilla, and Bernard tried to eat it to be a better waiter. Even so, the commission was also right to conclude the injury did not arise out of an actual risk of the employment. The quesadilla was not a hazard or danger, much less one peculiar to TGIF. Swallowing partially chewed food was a risk Bernard faced equally on and off the job. Nothing about the TGIF quesadilla or Bernard’s work environment increased that risk.[6] Bernard’s argument to the contrary confuses the separate concepts of in-the-course-of and arising-out-of, and in the process, invites us to apply de facto the positional risk doctrine. To do so would undermine “the distinction between arising ‘out of and arising ‘in the course of employment.” Johnson, 237 Va. at 186, 376 S.E.2d at 76.
III.
Because the commission correctly applied the actual risk test to the facts of this case, we affirm its denial of Bernard’s compensation claim.

Affirmed.

. Ellis v. Am. Airlines. Inc., VWC File No. 232-07-59 (Jan. 23, 2008) (accepting claim because candy contained a "hard object” that "shattered” an employee’s tooth); Pead v. Busara Rest., VWC File No. 194-76-93 (May 5, 2000) (accepting claim because food was unusually spicy); Caprio v. W. Point Sch. Bd., VWC File No. 189-45-16 (Oct. 14, 1998) (accepting claim because soup contained a hard object).

. See Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011); Combs v. Va. Elec. & Power Co., 259 Va. 503, 509, 525 S.E.2d 278, 282 (2000); Richmond Newspapers v. Hazelwood, 249 Va. 369, 372, 457 S.E.2d 56, 58 (1995); Metcalf v. A.M. Express Moving Sys., 230 Va. 464, 468, 339 S.E.2d 177, 180 (1986); Cent. State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 259 (1985); Richmond v. Braxton, 230 Va. 161, 164, 335 S.E.2d 259, 261 (1985); R & T Invs. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 289 (1984); Richmond Mem’l Hosp. v. Crane, 222 Va. 283, 285, 278 S.E.2d 877, 879 (1981); Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822; Conner v. Bragg, 203 Va. 204, 209, 123 S.E.2d 393, 397 (1962); Norfolk & Washington S.B. Co. v. Holladay, 174 Va. 152, 157-58, 5 S.E.2d 486, 488 (1939); Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938); Liberty Mut. Ins. Corp. v. Herndon, 59 Va.App. 544, 556-57, 721 S.E.2d 32, 38 (2012); Southside Va. Training Ctr. v. Ellis, 33 Va.App. 824, 829, 537 S.E.2d 35, 37 (2000); Vint v. Alleghany Reg’l Hosp., 32 Va.App. 60, 64, 526 S.E.2d 295, 297 (2000); Carlson v. Dep’t of Military Affairs, 26 Va.App. 600, 606, 496 S.E.2d 107, 110 (1998); Bassett-Walker, Inc. v. Wyatt, 26 Va.App. 87, 93, 493 S.E.2d 384, 387 (1997); Grove v. Allied Signal, Inc., 15 Va.App. 17, 19-20, 421 S.E.2d 32, 34 (1992); Winegar v. Int’l Tel. & Tel., 1 Va.App. 260, 261-62, 337 S.E.2d 760, 760-61 (1985).

. A workplace condition that "increasefs] the risk of injury” implicates the actual risk test. Hill City Trucking, 238 Va. at 739-40, 385 S.E.2d at 379-80; see also Simms, 281 Va. at 119-23, 704 S.E.2d at 361-63 (recognizing that the danger be "peculiar to the work and not common to the neighborhood” affirmed award based on then-Judge Cardozo’s observation that "young men and boys” create an enhanced risk of horseplay, a condition "inseparable from factory life” (citation omitted)); R & T Invs., 228 Va. at 253, 321 S.E.2d at 289 (noting the "probability" of harm may be "augmented” by the "peculiar” risks of the job (citation omitted)); Lucas v. Fed. Express Corp., 41 Va.App. 130, 135, 583 S.E.2d 56, 59 (2003) (focusing on the "special or peculiar” risks of the workplace); Roberson v. Whetsell, 21 Va.App. 268, 271 n. 1, 463 S.E.2d 681, 683 n. 1 (1995) (noting the employee’s risk "was heightened” by the conditions of his employment); Southland Corp. v. Parson, 1 Va.App. 281, 287, 338 S.E.2d 162, 165 (1985) (finding "elevated height constituted an ‘added risk’ of the employment”).

. In the few aberrational cases not involving street risks where such statements are made, they are usually caveated by the requirement that there be a "peculiar or abnormal degree” of risk. Honaker & Feeney v. Hartley, 140 Va. 1, 8-11, 124 S.E. 220, 222 (1924) (citing Cudahy Packing Co. v. Parramore, 263 U.S. 418, 424, 44 S.Ct. 153, 154, 68 L.Ed. 366 (1923) ("The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.”)).

. See, e.g., Williams v. Indus. Comm'n, 38 Ill.2d 593, 232 N.E.2d 744, 745 (1967) (choking on food did not arise out of the employment); Rodin v. Indus. Comm'n, 316 Ill.App.3d 1224, 250 Ill.Dec. 486, 738 N.E.2d 955, 960 (2000) ("[T]hat the claimant would not have consumed the food ... had he not been ordered to attend” does not mean his choking injury "arose out of his employment, as Illinois has never adopted the positional risk doctrine.”); Smith v. Bob Evans Farms, Inc., 754 N.E.2d 18, 27 (Ind.Ct.App.2001) (holding the "fact that [decedent] was in the course of his employment when the [choking] injury occurred is not sufficient” because his choking to death “did not arise out of his employment”); Ind. Mich. Power Co. v. Roush, 706 N.E.2d 1110, 1115 (Ind.Ct.App.1999) (holding nothing about the employment "increased” claimant's "risk of choking”); Klein v. Terra Chem. Int’l, Inc., 14 Md.App. 172, 286 A.2d 568, 572 (Md.Ct.Spec.App.1972) (rejecting "positional risk” test and finding claimant was not "exposed to any peculiar, special, or increased risk of choking on his food, different from that encountered by the general public”), overruled by Mulready v. Univ. Research Corp., 360 Md. 51, 756 A.2d 575, 583 (2000) (adopting "substantially the positional-risk test”); Bartlett v. Duke Univ., 284 N.C. *410 230, 200 S.E.2d 193, 195 (1973) (holding choking on food "was the same risk to which [claimant] would have been exposed had he been eating at home”); Forsythe v. INCO, 95 N.C.App. 742, 384 S.E.2d 30, 32 (N.C.Ct.App.1989) (holding employment "created no greater risk of injury or death by choking than the risk one must take every time food is ingested”).

. See Travelers Ins. Co. v. Majersky, 531 S.W.2d 765, 768-69 (Mo.Ct.App.1975) (affirming award because "it was the stress and tension of [claimant's] particular assignment that night and the haste in which he felt he was required to consume his meal which caused the employee to lapse into the careless method of eating which caused him to choke to death” and this involved a "different and greater risk” than he would ordinarily encounter apart from work).