COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and O'Brien
Argued at Lexington, Virginia

UNPUBLISHED

JAMES MADISON UNIVERSITY/
  COMMONWEALTH OF VIRGINIA
                                                      MEMORANDUM OPINION* BY
v.        Record No. 1252-19-3                        JUDGE MARY GRACE O'BRIEN
                                                           MARCH 10, 2020
IRMA D. HOUSDEN


                   FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Adam L. Katz, Senior Assistant Attorney General (Mark R. Herring,
             Attorney General; Samuel T. Towell, Deputy Attorney General; Tara
             Lynn R. Zurawski, Section Chief, on brief), for appellant.

             Terry L. Armentrout (Armentrout Accident & Injury Law, LLC, on
             brief), for appellee.


        James Madison University, a public university and agent of the Commonwealth,

("employer") appeals a Workers' Compensation Commission ("the Commission") decision

awarding benefits to Irma D. Housden ("claimant") for injuries resulting from a spider bite she

sustained at work on February 13, 2018.  Employer contends that the Commission failed to apply

the correct legal standard of whether claimant's "employment exposed her to a greater risk of a

spider bite than that encountered by the general public, i.e., whether there is a 'critical link' between

the conditions of the employment and the spider bite."  Employer also challenges the relevance and

accuracy of a number of the Commission's factual findings.  For the reasons below, we affirm the

award.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

At the time of her injury, claimant had worked for employer as an administrative assistant for approximately thirty-seven years. Claimant's office was on the third floor of Memorial Hall, a former high school converted into office space. Beginning in December 2017, the building's boiler room in the basement was under construction.

When claimant entered her office on the morning of February 13, 2018, she saw two spiders on a counter. She killed them but was unable to catch a third spider she saw on a cabinet. Later that day, claimant was at her desk talking with a coworker, Sandra Gilchrist, when she felt a bite on her foot. She exclaimed that she had been bitten and saw "at least two bites on [her] foot." Claimant went to the emergency room, where a doctor noted significant swelling and redness on her foot. Based on pictures, claimant identified the spiders in her office as brown recluse spiders. Additionally, medical records indicated that the doctor suspected a "[b]rown recluse spider bite or sting." Claimant was admitted to the hospital, underwent surgery, and was discharged on February 22, 2018.

Claimant filed for worker's compensation benefits, and an evidentiary hearing occurred on December 14, 2018. Claimant testified that approximately one or two weeks before being bitten, she saw spider webs in a stairwell with rooftop access. She saw another spider in May 2018 in Gilchrist's office, near her computer keyboard. Gilchrist confirmed claimant's account of being bitten by a spider on February 13, 2018. Gilchrist also testified that the boiler room was under construction at that time, and although she had not seen spiders in the building before the incident, she did kill two spiders in her office in April or May 2018.

Dr. Diane Wilcox, who worked in the same office suite as claimant, testified that although she was not present on February 13, 2018, she was aware of the incident. Wilcox also knew that employees had captured multiple spiders in April and May 2018, and she personally saw "a small

spider hanging in midair right above [claimant's] desk" in December 2018. Wilcox confirmed that the boiler room "directly below" their offices had been under construction for a few months before the incident, and the drilling was causing noise and "spewing . . . dust and debris." Wilcox stated that "up until the construction work that we had, I had never seen a spider in [the] building ever" and "the spider incident[s] started after the construction work."

A third employee, Randy Snow, provided written testimony that he worked in Memorial Hall and had captured and killed two spiders within two months of the February 13, 2018 incident.

Brandon Carter testified for employer. Carter was a pest control specialist hired to provide monthly treatments on campus, including the interior and exterior of Memorial Hall. He explained that he serviced the building's perimeter and applied preventative treatments aimed at cockroaches in the "mechanical rooms, common areas, kitchens, offices, [and] . . . interior" of the building. Carter never received a complaint of spiders in Memorial Hall before the incident and never saw a brown recluse spider anywhere on campus. However, he had observed "[h]ouse spiders and webbing" in "common areas, like mechanical rooms" before February 13, 2018. He did not see spiders in any offices before that date. Carter opined that nothing about claimant's office area would lead to an increased risk of a spider bite, but he acknowledged that construction activity could have "disturbed these spiders [in mechanical rooms] to make them move to a different part of the building."

Employer introduced Carter's service reports beginning with one dated November 2, 2017. In the reports from November 2017 to January 2018, Carter did not observe any pests except "light" cockroach activity on November 24, 2017.

After learning about claimant's spider bite, Carter's supervisor inspected Memorial Hall. Carter prepared a February 15, 2018 report about the visit. According to the report, the supervisor inspected the exterior and mechanical rooms and recommended correction of gaps in window

casings or sills and installation of window screens. A February 19, 2018 report reflected that although "[n]o activity [was] found" concerning "spiders and other crawling insects" in the third-floor offices, Carter treated cracks and crevices specifically to deter spiders. At the hearing, Carter testified that this treatment was "[j]ust a precautionary measure." Carter also treated the interior and exterior of the building for pests on February 20 and 22, 2018, and he reported no pest activity on either date.

Carter saw common household spiders in the building in April 2018. He reported his findings in an email to employer's facility manager on April 20, 2018:

> There was a report of a spider at Memorial Hall on April 19th[,] 2018. On April 20th, 2018[,] myself and your [pest management supervisor] inspected the building for spiders and other crawling insects. There was no activity present. They also had caught the suspected spider for observation. . . . I was able to determine that this insect was a common household spider. This spider is non[-]aggressive, and it is not poisonous. With our monthly exterior perimeter treatment, the *activity levels* [*have*] *dropped significantly*.

(Emphasis added).

At the conclusion of the hearing, the deputy commissioner found that claimant failed to prove the injury arose out of her employment and denied benefits. Upon review, a majority of the full Commission reversed. A dissenting opinion found that the evidence was insufficient to establish a "critical link" between the conditions of the workplace and claimant's injury.

ANALYSIS

A. Standard of Review

"On appeal, [this Court] view[s] the evidence in the light most favorable to the prevailing party before the [C]ommission." Portsmouth Sch. Bd. v. Harris, 58 Va. App. 556, 559 (2011) (quoting Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 269 (2004)).

"Whether an employee's work-related injury arises out of his employment 'involves a mixed question of law and fact, which [this Court] review[s] *de novo* on appeal.'" Turf Care, Inc. v. Henson, 51 Va. App. 318, 324 (2008) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). "Factual findings of the [C]ommission will not be disturbed on appeal, if based on credible evidence." Roberson v. Whetsell, 21 Va. App. 268, 271 (1995). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Mktg. Profiles, Inc. v. Hill, 17 Va. App. 431, 435 (1993) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279 (1986)).

Although this Court "defer[s], on appeal, to the [C]ommission's construction of the Workers' Compensation Act, we are 'not bound by the [C]ommission's legal analysis in this or prior cases.'" Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248 (2002) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1 (1998)).

B. The "arising out of employment" requirement

An injury is compensable under the Workers' Compensation Act only when it "aris[es] out of and in the course of the employment." Code § 65.2-101. "[T]he expressions 'arising out of' and 'in the course of' are used conjunctively and are not synonymous. Both conditions must be satisfied before compensation can be awarded." Graybeal v. Bd. of Supervisors, 216 Va. 77, 78 (1975). "The words 'arising out of' . . . refer to the origin or cause of the injury[,] while the language 'in the course of' pertains to the time, place, and circumstances under which the accident occurred." R & T Invs., Ltd. v. Johns, 228 Va. 249, 252 (1984). Here, claimant was injured at her workplace, and employer does not contest that the spider bite occurred in the course of her employment. The only dispute is whether the spider bite arose out of her employment.

The "arising out of" prong contemplates a causal link between the injury and the employment. See City of Richmond v. Braxton, 230 Va. 161, 164 (1985). "An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." Id. (quoting R & T Invs., Inc., 228 Va. at 252).

"Virginia employs the 'actual risk' test to determine whether an injury 'arises out of' the employment." Green Hand Nursery, Inc. v. Loveless, 55 Va. App. 134, 141 (2009).

> Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [employee] would have been equally exposed apart from the employment. *The causative danger must be peculiar to the work and not common to the neighborhood.* It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

Id. at 141-42 (emphasis added) (quoting Baggett Transp. Co. & Meador Trucking Co. v. Dillon, 219 Va. 633, 638 (1978)). See also Bernard v. Carlson Cos.-TGIF, 60 Va. App. 400, 405-06 (2012).

An actual risk of employment is "not merely the risk of being injured while at work." Taylor v. Mobil Corp., 248 Va. 101, 107 (1994). A claimant can prove actual risk by showing employment conditions create "an *enhanced* risk" of injury. Bernard, 60 Va. App. at 407. "A workplace condition that 'increase[s] the risk of injury' implicates the actual risk test." Id. at 407 n.3 (quoting Hill City Trucking v. Christian, 238 Va. 735, 740 (1989)). See also King v. DTH Contract Servs. Inc., 69 Va. App. 703, 713-16 (2019) (stating that, in assault cases, one way of demonstrating an injury arose out of the employment is by showing the assault resulted from an increased risk of assault created by employment).

- 6 -

However, demonstrating an increased risk is not the only method of proving actual risk.  See O'Donoghue v. United Continental Holdings, Inc., 70 Va. App. 95, 105 n.5 (2019).  A claimant can satisfy the actual risk test with evidence of a workplace condition that is "peculiar," "unusual," or otherwise "qualitatively different" than a risk to which the general public is exposed.  Bernard, 60 Va. App. at 407 (noting that in cases involving tripping on workplace steps, an injury is generally only compensable if the steps are "'unusual' because they are 'slightly higher than normal' or otherwise peculiar" and thus "present an *enhanced* risk, qualitatively different from the steps most people walk up and down on and off the job" (quoting County of Chesterfield v. Johnson, 237 Va. 180, 185-86 (1989))).  See also Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 572 (1968) (holding that an injury was compensable where the claimant fell going up workplace steps made from rock with unusual vertical distances); Loveless, 55 Va. App. at 141 (stating that "[t]he causative danger must be *peculiar* to the work and not common to the neighborhood" (emphasis added) (quoting Dillon, 219 Va. at 638)).

Absent a showing of actual risk, which can be evidenced in a number of ways, compensation would be a function of merely establishing "positional risk," a doctrine the Supreme Court has "consistently rejected."  Hill City Trucking, 238 Va. at 740.  "[A]n assessment of 'positional risk' . . . asks only if the injury occurred during the course of employment" and "overlook[s] 'the difference between the concepts of "arising out of" and "in the course of" the employment.'"  Bernard, 60 Va. App. at 405 (first quoting Johnson, 237 Va. at 185, and then quoting Dillon, 219 Va. at 640).

Virginia's actual risk test requires "[a] 'critical link' . . . between the conditions of the workplace and the injury in order for the injury to qualify as 'arising out of' the employment."  Pinkerton's Inc. v. Helmes, 242 Va. 378, 380 (1991) (quoting Johnson, 237 Va. at 186).  This critical link may be shown by evidence of an injury resulting from an unusual workplace condition

or job responsibility.  See Johnson, 237 Va. at 182, 186 (finding "[n]o such link" where a water-treatment plant worker failed to prove anything unusual about the stairs he fell down *en route* to a basement to check on water pumps); Marion Corr. Treatment Ctr. v. Henderson, 20 Va. App. 477, 479 (1995) (affirming award where claimant's "job responsibilities caused him to watch the tower guards rather than the steps," providing "the 'critical link' between the conditions of the workplace and the injury," and thereby proving his "injury arose out of his employment").

Here, the Commission's majority opinion determined that claimant's injury was compensable because "[h]er work environment during the construction exposed her to the risk of spiders."  The majority did not expressly require evidence of a spider bite risk that was qualitatively different from that to which the general public is exposed.  To the contrary, the majority opinion indicated that her injury would be compensable regardless of whether the risk was shared by the general public and not peculiar to the employment.  This articulation of the standard more closely reflects positional rather than actual risk.  "The fact that the injury occurred at work adds nothing and answers nothing, when the inquiry is, did the injury arise out of the employment.  It simply helps prove the 'in the course of' prong of the compensability test."  Johnson, 237 Va. at 185.

However, the evidence cited by the majority opinion, and the record as a whole, satisfies the actual risk test articulated above.  Where it is clear on the record that the Commission reached the right result for a different reason, an appellate court may affirm the decision.  See Granados v. Windson Dev. Corp., 257 Va. 103, 109 (1999) ("Since the Commission reached the correct conclusion[,] . . . although it gave the wrong reason, we sustain that conclusion and assign the right ground."); Mercy Tidewater Ambulance Serv. v. Carpenter, 29 Va. App. 218, 226 (1999).  Here, the record demonstrated a peculiar and unusual presence of spiders in claimant's office area after December 2017, when construction began in the boiler room directly below.  The construction subjected claimant to a risk of spiders that was qualitatively different from that to which the general

public is exposed.  See Bernard, 60 Va. App. at 406-07.  The Commission found that not only did claimant see three spiders the day of the incident, but also her coworkers observed spiders "within a few months of [claimant's] injury" and the "problem . . . persisted until shortly before the hearing." Further, the record supports a finding that claimant was bitten by a brown recluse spider, an invasive species not common to an office environment.  Therefore, credible evidence in the record demonstrated a causative danger that was peculiar to claimant's workplace.  See Loveless, 55 Va. App. at 141.

Additionally, the evidence established both a physical and temporal proximity between a peculiar or unusual workplace condition (i.e., construction causing a proliferation of spiders in an office suite where they were not usually found) and claimant's spider-bite injury.  Accordingly, claimant proved the necessary "critical link."[1]  See Pinkerton's, Inc., 242 Va. at 380.  Because the Commission reached the correct conclusion that claimant's injury arose out of her employment, we affirm that result.  See Granados, 257 Va. at 109; Carpenter, 29 Va. App. at 226.

---

[1] In its assignment of error, employer argues that the Commission failed to apply the correct legal standard of whether claimant's "employment exposed her to a *greater risk* of a spider bite than that encountered by the general public, i.e., whether there is a 'critical link' between the conditions of the employment and the spider bite."  (Emphasis added).  We disagree with employer's construction of the appropriate legal standard.  Virginia's actual risk doctrine does not require evidence of a greater or increased risk; a claimant can satisfy the actual risk test with evidence of a peculiar, unusual, or otherwise qualitatively different workplace condition.  See Bernard, 60 Va. App. at 407.

Additionally, we disagree that employer's favored "greater risk" standard is synonymous with the "critical link" requirement.  The cases analyzing the "critical link" requirement speak more broadly about a claimant's burden to establish a causal connection between an unusual workplace condition and the injury.  See Pinkerton's, Inc., 242 Va. at 380-81 (declining to presume that a claimant's injury arose out employment when brain damage left her unable to recall any facts regarding a car accident between her workplace and a public highway); PYA/Monarch v. Harris, 22 Va. App. 215, 224-25 (1996) (holding that a claimant's injury was a non-compensable unexplained accident when he found himself lying outside of his delivery truck, injured, and with no memory of what happened).

C. The Commission's factual findings

Employer contests certain factual findings of the Commission, asserting that they are either unsupported by the evidence or prove only that claimant's injury occurred "in the course of" her employment, not that it "arose out of" her employment.

Initially, employer challenges the relevance of the Commission's findings concerning the circumstances of the injury, including that claimant saw three spiders on the date she was injured, that she identified them as brown recluse spiders, and that her injury was corroborated by a witness. Employer argues that these facts only demonstrate that the spider bite occurred at work and thus the injury occurred "in the course of" the employment. However, the number of spiders claimant observed on February 13, 2018, is relevant to the "arising out of" analysis because it demonstrates that her work environment exposed her to an actual risk of a spider bite not shared by the general public. See Loveless, 55 Va. App. at 141. Likewise, claimant's identification of the spiders as brown recluses is evidence of an invasive species unusual to an office environment. See Hosey, 208 Va. at 569, 572 (affirming award where workplace steps were made from rocks, and the vertical distance between each step was "just a little bit higher than usual for a step").

Employer asserts that no evidence in the record supports the Commission's findings that claimant's "work environment during the construction exposed her to the risk of spiders" and "[a]t the time of the accident, construction had recently begun in the boiler room, one of the mechanical rooms located directly below [the] office suite." In support of its argument, employer relies primarily on testimony from the pest control technician, Brandon Carter.

Credible evidence in the record supports the Commission's conclusion regarding a significant and unusual presence of spiders in the office after construction began in December 2017. Although Carter's testimony may contradict other evidence, it does not mandate reversal of the Commission's decision. See Mktg. Profiles, Inc., 17 Va. App. at 435 (stating that the Commission's

findings supported by credible evidence will not be disturbed on review "even though there is evidence in the record to support a contrary finding" (quoting Morris, 3 Va. App. at 279)). Further, Carter acknowledged that the construction activity itself could have "disturbed these spiders [in mechanical rooms] to make them move to a different part of the building."

Employer also disputes the Commission's findings that Carter "had seen spiders and spider webs in the mechanical rooms before [claimant] was bitten on February 13, 2018" and "[s]piders were present in the area where [claimant] worked both before and after the accident." Employer argues that Carter's observation of spiders in the mechanical rooms is irrelevant to the presence of spiders in office spaces. However, the presence of spiders and spider webs in mechanical rooms supports the inference that construction in the boiler room resulted in the proliferation of spiders in the office space directly above. The Commission found a causal connection between construction beginning in December 2017 and the unusual presence of spiders in the third-floor office suite. This finding is supported by credible evidence, and we will not disturb it on appeal despite conflicting evidence. See id.

Employer asserts that, contrary to the Commission's findings, "there is no evidence in the record that spiders were seen in the third floor before February 13, 2018." However, the Commission did not find that spiders were in claimant's office "before February 13, 2018" but, rather, "before and after *the accident*." (Emphasis added). The uncontroverted evidence that claimant observed three spiders in her office the morning she was bitten was necessarily "before . . . the accident."

Employer also argues that the presence of multiple spiders during the ten months after the incident does not prove claimant's employment exposed her to an increased risk of spiders on February 13, 2018. We disagree. First, the actual risk test does not require evidence of an increased risk; peculiar, unusual, or otherwise qualitatively different risks can satisfy the test. Bernard, 60

Va. App. at 407. Second, the persistent spider sightings, requiring additional treatment by the pest control technician, support an inference that on the day of the incident, there was already a significant and unusual presence of spiders that was qualitatively different from that which the general public encounters. See id. See also Loveless, 55 Va. App. at 141. Further, Carter's April 20, 2018 email that spider activity levels "dropped significantly" due to additional treatment supports an inference that previous activity levels were peculiar and unusual for the workplace. Even assuming Carter's email was in the context of household spiders, it nevertheless supports a finding that claimant's workplace exposed her to an unusual risk of spider encounters, including the brown recluse spiders she identified in the emergency room after the incident. Therefore, evidence of persistent, post-incident spider activity is relevant to whether the workplace conditions exposed claimant to an actual risk of a spider bite.

Finally, employer challenges the relevance of the Commission's finding that Carter "recommended correcting gaps in window casings or sills and screening windows." Employer argues that subsequent remedial measures are inadmissible to prove negligence or culpable conduct under Code § 8.01-418.1 and Rule of Evidence 2:407. However, employer introduced this evidence and did not object to the Commission considering it on the issue of employer's responsibility for claimant's injury. Therefore, employer has waived the issue on appeal. See Rule 5A:18.

Further, to the extent employer offered this evidence to demonstrate that any pest control was merely "precautionary," the Commission was free to draw its own reasonable inferences from the evidence, including that there was significant spider activity on the premises. See Am. Furniture Co. v. Graves, 141 Va. 1, 9 (1925) (cautioning that "[i]t must . . . be remembered that the Commission is empowered to draw reasonable inferences from proper testimony introduced").

- 12 -

CONCLUSION

For the reasons stated, we hold that claimant proved her spider bite injury arose out of her employment, and we affirm the Commission's decision awarding compensation for her injury.

<u>Affirmed.</u>