COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

UNPUBLISHED

KATHERINE HAZELWOOD AS ADMINISTRATOR
 OF THE ESTATE OF JACOB HAZELWOOD

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0389-21-2                 JUDGE ROBERT J. HUMPHREYS
                                                         OCTOBER 5, 2021
VIA SATELLITE, INC. AND
 TRAVELERS CASUALTY AND SURETY COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Seth Carroll (Commonwealth Law Group, PLLC, on briefs), for
> appellant.
>
> Lisa M. Frisina (K. Elizabeth O'Dea; PennStuart, on brief), for
> appellees.

On March 28, 2019, Jacob Hazelwood ("Hazelwood") was seriously injured in an automobile accident in the course of his employment with Via Satellite ("Via") and his injuries eventually led to his death. The administrator of his estate, Katherine Hazelwood, filed a series of claims with the Workers' Compensation Commission ("the Commission"). The Commission found that Hazelwood did not prove that his injuries arose out of his employment and denied his claims. On appeal, Hazelwood argues that the Commission erred in determining that he failed to establish by a preponderance of the evidence that his injuries arose from an actual risk of his presence on a public street. He also argues that the Commission erred in finding the evidence insufficient to demonstrate that Hazelwood's speed caused the automobile accident.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

On the day of the accident, Hazelwood was employed by Via and was living with his mother in her house. That morning, Hazelwood left his mother's residence in a company van to travel to a customer's house to perform work for Via. Hazelwood drove west down Lenning Road, a two-lane road. The speed limit was 55 miles per hour ("mph").

Approximately ten to eleven minutes after leaving his home, Hazelwood entered a curve on Lenning Road. The speed limit on the curve was the same as on the rest of the road, 55 mph. While traveling the curve, Hazelwood's vehicle left the westbound lane, crossed the center line into the eastbound lane, and struck a tractor trailer in a head-on collision. A Virginia State Police officer, Special Agent David Lacks ("Special Agent Lacks"), responded to the scene; when he arrived, both the company van and the tractor trailer were on fire. Hazelwood was airlifted to a burn center where both of his legs were amputated, and he was treated for third-degree burns. He remained in the hospital for twenty-seven consecutive weeks before eventually succumbing to his injuries.

Hazelwood was not known to be physically or mentally impaired at the time of the accident. The company van contained a GPS device that transmitted the vehicle's speed and location to a cloud-based system approximately every ninety seconds. Sometime in the ninety seconds after the last GPS "ping" was recorded, Hazelwood crossed the center line of the road and collided with the tractor trailer. The last set of data transmitted from the GPS showed that Hazelwood was traveling at 55 mph.

Hazelwood filed four claims for his injuries, seeking medical benefits, permanent partial disability benefits, temporary total disability benefits, and death benefits.

A hearing was held before the Commission. Multiple individuals testified at the hearing including the responding officer, the director of finance and administration for Via

("Mr. Brown"), Hazelwood's mother, an expert in accident reconstruction, and an expert in highway design and traffic engineering. Via asserted that Hazelwood was not injured by an accident arising out of his employment.

Following the hearing, the Commission found that Hazelwood did not prove that his injuries arose out of his employment and denied his claims, stating that Hazelwood "failed to establish, by a preponderance of the evidence, that [his] injuries arose from an actual risk of his presence on the street. Accordingly, we find no error . . . ." The Commission found that, "[a]fter weighing the evidence in this case, we find the evidence is simply not sufficient to show Mr. Hazelwood's speed around this curve caused or contributed to the accident."

Hazelwood's two assignments of error, first, that the Commission erred in finding his injuries did not arise out of his employment based on the evidence presented and, second, that the evidence was insufficient to prove his speed at the time of the accident, are related. Both assignments of error contend that the Commission erred in how it weighed the evidence and, as such, we will address them jointly.

## II. ANALYSIS

### A. Standard of Review

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411 (2013) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). "Accordingly, although we are bound by the [C]ommission's underlying factual findings if those findings are supported by credible evidence, we review *de novo* the [C]ommission's ultimate determination as to whether the injury arose out of the claimant's employment." Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477 (2006) (citations omitted). The existence of contrary evidence in the record is of no consequence if credible evidence

supports the Commission's finding.  See City of Waynesboro v. Griffin, 51 Va. App. 308, 312 (2008).

## B.  The Commission's Findings

Hazelwood contends that the Commission considered only direct evidence and "improperly ignored credible, uncontradicted circumstantial evidence" in concluding that Hazelwood did not prove that his accident was due to an actual risk of his employment. Hazelwood asserts that the Commission should be reversed "due to the credible and uncontradicted direct and circumstantial evidence in the record which demonstrates Mr. Hazelwood's accident arose as a direct result of his exposure to the hazards of the Lenning Road Curve."

In its opinion, the Commission recounted the evidence that it heard.  Peter Parsonson ("Parsonson"), an expert in highway safety, opined that the recommended safe speed for that curve was only 35 mph, contrary to the posted speed limit, which was 55 mph.  Parsonson's opinion was that the lack of speed-reduction signage contributed to Hazelwood crossing the center line of the road.

The Commission also recounted testimony from Steven Chewning ("Chewning"), an expert in accident reconstruction, wherein he opined that the recommended safe speed for the curve was 42 mph.  However, Chewning denied that 42 mph was the only safe speed for the curve.  He opined that vehicles would not lose control and "spin out" unless they exceeded 79 mph while traveling the curve.

The Commission pointed out that despite expert testimony regarding what was a safe speed of travel on the curve, there was still a dearth of evidence regarding at what speed Hazelwood was actually traveling at the time of the collision.  It noted that the only evidence introduced regarding Hazelwood's speed was GPS data captured *before* he entered the curve.

- 4 -

Further, Hazelwood's brother-in-law, Michael Malone ("Malone"), testified that Hazelwood was known for driving "super safe" and compared Hazelwood's driving to a "grandma."

Special Agent Lacks testified that he did not know why Hazelwood's vehicle crossed over the center line. Chewning also testified that he was unable to determine what caused Hazelwood's vehicle to cross the line, despite visiting the accident site in-person. Chewning stated that if a driver is traveling too fast for a curve and he spins out of control, the force and friction of the tires leaves a "very distinct set of spinning tire marks known as yaw marks or scuff marks." Chewning pointed out that no marks of that type were found at the scene of Hazelwood's accident. He also opined that drivers who enter a curve too quickly and consequently lose control of their vehicle usually "go out of the curve at the top. You're not going to go down 86.3 percent through the curve." Chewning stated that he documented the position of Hazelwood's van "down the curve" because "it was contrary to the notion that the vehicle spun out" due to excessive speed.

For an injury to be compensable under the Workers' Compensation Act, the claimant must prove by a preponderance of the evidence that (1) the claimant's injury was caused by an accident, (2) the injury was sustained in the course of employment, and (3) the injury arose out of the employment. See Southland Corp. v. Parson, 1 Va. App. 281, 283-84 (1985). The parties in the present case agree that Hazelwood satisfied the first two prongs of the compensable injury test. The issue is whether his accident "arose out of" his employment.

To determine whether an injury arose out of employment, Virginia courts employ the "actual risk" test. See Snyder, 62 Va. App. at 412. "That test 'excludes an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.'" Id. at 412-13 (quoting Bernard v. Carlson Cos.-TGIF, 60 Va. App. 400, 405 (2012)). In other words, an injury that cannot be fairly traced to the employment as a contributing

proximate cause and that comes from a hazard that the employee would have been equally exposed to apart from their employment is not a compensable injury under the Workers' Compensation Act. See id.

This Court has applied the "actual risk" test to employee travel on public streets as follows: a claimant who was injured while traveling on a public highway must establish by a preponderance of the evidence that his job (1) required his presence on the street and (2) his injury arose from an actual risk of that presence upon the street that was not common to others also present on that street. See Sentara Leigh Hosp. v. Nichols, 13 Va. App. 630, 634 (1992). Here, it is undisputed that Hazelwood met the first prong of the test because his employment required him to drive on the public road to a customer's house. However, the Commission found that Hazelwood failed to meet the second prong of the Sentara Leigh test. It found he did not prove by a preponderance of the evidence that his injury arose from an actual risk of his presence on the street. "An '"actual risk" of employment' is 'not merely the risk of being injured while at work.'" Bernard, 60 Va. App. at 405 (quoting Taylor v. Mobil Corp., 248 Va. 101, 107 (1994)). "The causative danger must be peculiar to the work and not common to the neighborhood." Id. at 406 (quoting Hill City Trucking v. Christian, 238 Va. 735, 739 (1989)).

The contours of the "arising out of" prong are well-illustrated. The test is satisfied if the claimant proves that "the employment expose[d] the work[er] to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." O'Donoghue v. United Continental Holdings, Inc., 70 Va. App. 95, 104 (2019) (alterations in original) (quoting Lucas v. Lucas, 212 Va. 561, 563 (1972)). The requirement is met "only . . . 'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" Id. (quoting Virginia Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524,

534 (2013)). However, "[h]azards to which the general public is equally exposed are non-compensable." Id. at 105 (alteration in original).

An employee who trips while on a staircase at work "cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite." Bernard, 60 Va. App. at 407. Even though the steps on which the employee tripped were provided by the employer and the employee was encouraged to use them, "if there is 'nothing unusual or wrong with the steps,'" the accident did not arise out of the employment. Id. (quoting Cnty. of Chesterfield v. Johnson, 237 Va. 180, 186 (1989)).

Therefore, under our case law, for his claims to be compensable, Hazelwood had to prove a "critical link" between the conditions of the highway and the injury he sustained. See Hill v. Southern Tank Transport, Inc., 44 Va. App. 725, 732 (2005). "[U]nder the 'actual street risk rule,' facts must exist to explain how the accident occurred. Without such an explanation, claimant *cannot prove* the second prong of the Sentara Leigh test . . . ." Id. at 732-33 (emphasis added). Hazelwood bore the burden of proving by a preponderance of the evidence that his injury was caused by a hazard on the road. See id. at 733. The Commission found that Hazelwood failed to meet his burden of proof, and he now essentially asks us to hold as a matter of law that he did.

There was no direct evidence adduced regarding what caused Hazelwood to cross the center line of the road and enter an oncoming tractor trailer's path. On brief, Hazelwood relies heavily on Parsonson's opinion that the posted speed limit at the location where the crash occurred, 55 mph, was not a reasonably safe speed for anyone to travel the curve. Parsonson stated that drivers who went over 35 mph on the curve were at an increased safety risk and that the lack of road signs warning drivers to slow down more likely than not contributed to Hazelwood's accident. He also emphasizes Chewning's testimony that the recommended safe speed for the curve was 42 mph. Although Hazelwood contends that the Commission failed to consider Parsonson's expert opinion,

it is clear from the record that the Commission did consider it but simply gave it little or no weight. As the factfinder, the Commission was entitled to determine the credibility of the witnesses and the weight to give their testimony. See Metropolitan Cleaning Corp. v. Crawley, 14 Va. App. 261, 266 (1992) ("As a fact finder, a commission established by the legislature to decide workers' compensation disputes 'acquires an expertise and accumulates an experience in [its] limited, specialized field often more extensive than that of the judiciary.'").

Moreover, lack of signage, in and of itself, is not direct evidence that Hazelwood was unwittingly driving at an unsafe speed when he entered the curve or that traveling the posted speed caused him to cross over the center line. The last available data regarding Hazelwood's speed, taken from a GPS, was captured approximately ninety seconds before the crash. It does not automatically follow that Hazelwood maintained his speed after that reading when he entered the curve. Additionally, GPS data established that Hazelwood had driven a company vehicle through the same curve at least ten times in four months prior to the accident, from which a reasonable implication can be drawn that he was familiar with safely navigating that portion of the road. The crash site was only ten minutes away from Hazelwood's home, further increasing the probability that the curve was not unfamiliar to him. In addition, although Chewning said his recommended safe speed for the curve was 42 mph, he denied that it was the "only safe speed" and opined that vehicles were unlikely to spin out unless they exceeded 79 mph. In short, Hazelwood asked the Commission to speculate regarding the speed he was going at the time of the crash and infer, based solely on that speculation, that his speed was what caused the vehicle to cross the center line. The Commission correctly declined to do so and stated that a claimant who does not prove that his injury arose from an actual risk of his presence on the street cannot collect compensation under the Workers' Compensation Act because he has not met his evidentiary burden to establish that his injuries arose out of his employment. See Hill, 44 Va. App. at 733.

- 8 -

Hazelwood counters on brief that "the mere nonexistence of direct evidence in the form of the claimant's memory or an eyewitness' account does not, in and of itself, preclude an award for benefits." Griffin, 51 Va. App. at 314. While that statement is accurate, it is incomplete. Our case law holds that the Commission "may find an explanation for an accident based on circumstantial evidence" when "the circumstantial evidence . . . takes the question *beyond surmise or conjecture*." Id. at 314-15 (emphasis added). Here, the record supports the Commission's finding that the circumstantial evidence did not take the question beyond surmise or conjecture. Special Agent Lacks testified that he did not know why Hazelwood's vehicle crossed the center line. Chewning also testified that he did not know why Hazelwood crossed the center line and collided with the tractor trailer. In its opinion, the Commission quoted the deputy commissioner as follows:

> Several witnesses testified they did not know why the accident occurred. Mr. Brown noted he simply did not know the circumstances leading up to the accident. Traveling too fast for the curve could certainly be a cause of the accident. However, the reason could be that Mr. Hazelwood fell asleep and crossed the center line. The reason could be that he was distracted by selecting a radio station and crossed the center line. The reason could be that he was distracted by something else and crossed the center line. We do not know that traveling too fast for the curve was the "actual risk" that caused the accident. The critical link between the employment and injuries has not been shown.

Here, the Commission evaluated the testimony by both expert witnesses, testimony from the responding officer and Hazelwood's family, as well GPS data, and determined that Hazelwood had not established by a preponderance of the evidence that his injuries were caused by speed, which is to say, the Commission did not find that his injuries were caused by an actual risk resulting from his presence on the road. On appeal, Hazelwood asks this Court to find that the circumstantial evidence presented to the Commission placed the cause of Hazelwood's accident beyond surmise or conjecture. However, "[w]e do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses." Caskey v. Dan River Mills,

- 9 -

Inc., 225 Va. 405, 411 (1983). We are bound by the Commission's findings of fact if there was credible evidence presented "such that a reasonable mind *could* conclude that the fact in issue was proved." Griffin, 51 Va. App. at 312. Conversely, where the Commission has found the evidence lacking, we will not independently evaluate the credibility of the evidence or its weight. As enumerated above, the record supports the Commission's conclusion. We must defer to the Commission's assessment of the "probative weight" of the proffered evidence; the Commission is "free to adopt that view 'which is most consistent with reason and justice.'" See id. at 312-13 (quoting Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5 (2000)).

### III. CONCLUSION

Because the Commission's conclusion that Hazelwood failed to establish that his injuries arose from an actual risk of his presence on the street was not plainly wrong as a matter of law, nor was it unsupported by credible evidence, we find that the Commission did not err and affirm the judgment of the Commission.

Affirmed.